Nylla KUNARD, Sublette County Treasurer; and Donald R. (Buzz) Wassenburg, Monte Skinner, Craig Crandall, Sitting as the Board of County Commissioners of Sublette County, and as the Sublette County Board of Equalization, Appellants (Defendants),

v.

ENRON OIL & GAS COMPANY, Appellee (Plaintiff).

ENRON OIL & GAS COMPANY, Appellant (Plaintiff),

v.

Nylla KUNARD, Sublette County Treasurer; and Donald R. (Buzz) Wassenburg, Monte Skinner, Craig Crandall, Sitting as the Board of County Commissioners of Sublette County, and as the Sublette County Board of Equalization, Appellees (Defendants).

Nos. 93–149, 93–163.

Supreme Court of Wyoming.

Feb. 18, 1994.

Van Graham, Deputy County & Pros. Atty., Pinedale, for appellants.

Thomas F. Reese of Brown & Drew, Casper, Dante L. Zarlengo, Denver, CO, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Sublette County (County) appeals the district court's entry of summary judgment on Enron Oil & Gas, Co.'s (Enron) declaratory judgment action and action to recover interest paid on ad valorem taxes assessed against it. Enron cross-appeals the district court's decision that Enron must pay interest on underpaid ad valorem taxes, despite its net credit balance.

We reverse.

## ISSUES

In Appeal No. 93–149, appellant County presents the following issue for review:

Whether the trial court erred in not ordering interest on under-paid ad valorem taxes from the date said taxes should have been paid?

Appellee Enron restates the issue as:

Should Enron be required to pay interest on ad valorem taxes which were underpaid while the amount of underpayment was subject to review by the Wyoming Board of Equalization and was unliquidated?

On cross-appeal, Appeal No. 93–163, Enron presents the following issues:

A. Whether the trial court committed error in finding that Enron was required to pay interest to Sublette County when Enron was in fact entitled to a refund from Sublette County?

B. Whether or not Enron is required to pay interest to Sublette County on wells for which it has underpaid ad valorem taxes and no notice or certification of delinquent taxes and interest was provided to Enron as required by W.S.A., § 39–3–102(c)?

County responded with the following statement of the issue:

Whether the trial court erred in finding Enron was required to pay interest on

taxes for some production when entitled to a refund on taxes for other production?

## FACTS

Enron operated a number of oil and gas wells in Sublette County during the years 1987, 1988, 1989, and 1990. As to some of the wells, Enron reported and paid ad valorem taxes based upon the entire amount of production during that period. Chevron, U.S.A., Inc. (Chevron) owned an undivided interest in the same wells and separately reported and paid tax on its share of production for the same period, resulting in a double payment as to Chevron's interest. Other discrepancies in reported oil and gas production also existed. For the years in question, Enron had under-reported production on some wells and over-reported on others. For each of the years in question, Enron's overpayments exceeded its underpayments.

Following Enron's filing of amended tax returns in 1990, the State Board of Equalization issued Special Directives Nos. 91–116 and 90–541. The directives instructed the county assessor to adjust the tax year valuations by the amounts indicated in the directives, and to refund overpayments and collect underpayments. Sublette County issued a refund check to Enron for its overpayments, but deducted from the refund interest added to underpayments from the date the underpayments were due.

Enron petitioned the Board of County Commissioners of Sublette County to recover the interest and penalties withheld from its refund of the overpaid ad valorem taxes. On January 7, 1992, the Board of County Commissioners passed a resolution denying Enron's petition. On February 4, 1992, Enron filed a complaint in district court seeking declaratory judgment that it was not required to pay interest on the underpaid ad valorem taxes, as well as a judgment against the County for the interest charged, and an injunction enjoining the County from collecting interest improperly assessed against Enron. Both parties moved for summary judgment.

The district court granted and denied each motion in part. The court agreed with the

County that Enron was required to pay interest on its underpaid ad valorem taxes, but held that interest should only be assessed from the time that Enron was notified of the amount of its underpayment. These appeals followed.

## STANDARD OF REVIEW

Summary judgment is appropriate only when no genuine issue of material fact exists, and the prevailing party is entitled to judgment as a matter of law. *Lynch v. Norton Constr., Inc.,* 861 P.2d 1095, 1097 (Wyo.1993); *Brown v. Avery,* 850 P.2d 612, 614–15 (Wyo. 1993). The parties agree no question of fact exists; therefore, our only question is whether the district court properly applied the law. Using the standard of review in *Wyoming State Tax Comm'n v. BHP Petroleum Co.,* 856 P.2d 428, 431 (Wyo.1993), this court has stated it is "not bound by the trial court's determinations on issues of law."

## DISCUSSION

1. *Appeal No. 93–149—Date from which interest must be paid.*

■ In this appeal, the County appeals the district court's holding that interest can only be assessed from the time Enron was actually notified of its deficiency. The County contends interest should be assessed from the date the tax should have been paid. For the reasons that follow, we agree with the County's position.

A tax is delinquent "when a taxpayer or his agent knew or reasonably should have known that the total tax liability was not paid when due." Wyo.Stat. § 39–2–214(f) (Supp. 1992); *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 445 (Wyo.1993). In *Moncrief,* this court held that under a self-assessment tax scheme, where the statute requires the taxpayer to value and report gross production and then pay a percentage of the value as tax, it is the taxpayer's duty to ensure that the value is fully and accurately reported. *Moncrief,* 856 P.2d at 443, 446. We concluded that when a taxpayer excludes required elements from its reported production, and the exclusion causes an underpayment, the tax is delinquent upon the taxpay-

er's failure to pay on the date due, not at the later date when the taxpayer is presented with notice and demand of the deficiency.

In so holding, this court agreed with the taxpayers that assessment is an essential step in the taxing process, but we observed that "no assessment is necessary where the statute itself prescribes the amount to be paid." *Moncrief,* 856 P.2d at 446 (quoting 3 Thomas M. Cooley, The Law of Taxation, § 1045 at 2116 (1924)). Where the statute prescribes the amount to be paid or the items to be included in the property valuation, no discretion remains to be exercised by either the taxpayer or the taxing authority. *Moncrief,* 856 P.2d at 446. The taxpayer knows or should reasonably know the entire tax liability, or the correct valuation for assessment, when the tax is due.

Wyo.Stat. § 39–2–201(b) requires taxpayers to annually "sign under oath and submit a statement listing the information relative to the property and affairs of the company as the department may require to assess the [gross product of the mines and mining claims]." Wyo.Stat. § 39–2–208 outlines the information necessary to value oil and gas for the assessment of taxes. Enron therefore knew or should have known the proper information to submit for valuation of its gross product.

The ad valorem tax scheme differs from the severance tax self-assessment scheme in that the county assesses the ad valorem tax after the taxpayer reports gross production. However, the same public policy which supported our reasoning in *Moncrief* applies in this situation.

If, as suggested by [Taxpayers], all taxpayers could intentionally undervalue the mineral and make an inaccurate payment on the undervaluation for severance tax purpose without fear of paying interest upon discovery, there would be no reason for the taxpayer to make the correct payment. In fact, from an economic standpoint, taxpayers would be foolish to make an accurate payment when they could make the correct payment in the future without any adjustment for the time value of the money. It is clearly a bonus to the taxpayers to be

allowed to pay 1981 taxes with 1990 dollars.

*Moncrief,* 856 P.2d at 445. The county must rely upon the taxpayer's reported gross production in assessing the ad valorem tax. The purpose of interest is to serve "as compensation for the use of money, or as a penalty, or it may constitute a part of the tax." *Moncrief,* 856 P.2d at 445 (quoting 85 C.J.S. *Taxation* § 1054(c) at 638 (1954)). Assessing interest only from the date of notification and demand is contrary to these purposes. Such an interpretation would permit the taxpayer to undervalue gross production without risk of penalty and would allow the taxpayer the free use of the unpaid tax dollars.

We hold, therefore, that when a taxpayer undervalues its gross production, the underpaid ad valorem tax is delinquent on the date it should have been paid, not on the later date of notification and demand. We next address the question whether Enron should have been charged interest at all when it maintained a credit balance for each of the years in question.

2. *Appeal No. 93–163—Interest when taxpayer maintains credit balance*

WYO.STAT. § 39–3–101(b) (1990) provides:

The balance of any tax not paid as provided by subsection (a) of this section is delinquent after the day on which it is payable and shall bear interest at eighteen percent (18%) per annum until paid or collected.

Enron contends this statute imposes interest on underpaid taxes only when the taxpayer's total underpayments exceed its overpayments for a given year. In support of this argument, Enron refers to the statute's language which charges interest on the "balance of any tax not paid." Enron asserts the term *balance* refers to the taxpayer's annual net balance, after offsetting overpayments and underpayments. The County offers a different definition of *balance,* contending the term refers to the amount remaining due against the specific property assessed for ad valorem taxes, regardless of any overpayments on other taxable production.

Upon review of the statute as a whole and after application of our well-established rules of statutory construction, we must align with Enron's position. In construing statutes, our initial step is to determine the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993). A statute "must be construed as a whole in order to ascertain its intent and general purpose and also the meaning of each part." *Parker,* 845 P.2d at 1042 (quoting *Ross v. Trustees of Univ. of Wyoming,* 31 Wyo. 464, 489, 228 P. 642, 651 (1924)).

Black's Law Dictionary defines the term *balance* as

[a]n equality between the sum total of the two sides of an account, or the excess on either side. The difference between the sum of debit entries minus the sum of credit entries in an account. If positive, the difference is called a debit balance; if negative, a credit balance.

Often used in the sense of residue or remainder, and, in a general sense, may be defined as what remains or is left over.

BLACK'S LAW DICTIONARY 130 (5th Ed.1979). While either party's interpretation could be assigned to the term *balance,* as here defined, we find Enron's definition best fits with the statute and the act read as a whole.

Subsection (a) of WYO.STAT. § 39–3–101 (1990) outlines when taxes provided by the act are due. It reads, in part:

Fifty percent (50%) of the taxes are due on and after September 1 and payable on and after November 10 in each year and the remaining fifty percent (50%) of the taxes are due on and after March 1 and payable on and after May 10 of the succeeding calendar year except as hereafter provided. If the entire tax is paid on or before December 31, no interest or penalty is chargeable.

We must read the language of subsection (b) in conjunction with the language of subsection (a). The language of subsection (a) clearly refers to the total tax liability of the taxpayer, not the individual taxes assessed

against specific property. The language of subsection (b) then refers back to the taxes provided by subsection (a). Thus the phrase "the balance of any tax not paid" means the total balance of all taxes due from the taxpayer, not the balance on an individual piece of property.

This interpretation is also consistent with the manner in which the taxpayers are required to report gross production. WYO. STAT. § 39–2–201(b) requires taxpayers to submit *a statement* listing the information relative to the property and affairs of the company as may be required to assess the property. The valuations on the taxpayer's property are treated as a whole rather than individually.

Furthermore, none of the purposes to be served by interest charges are served by assessing interest against a taxpayer who has maintained a credit balance for the taxable period. The taxpayer does not benefit from the free use of the money, and clearly no penalty is necessary to discourage future reporting discrepancies which result in a credit balance.

Finally, this court has held that "[e]quitable considerations will not be entirely disregarded even in tax cases." *Morrison–Knudson Co. v. State Bd. of Equalization,* 58 Wyo. 500, 135 P.2d 927, 939 (1943). Because Enron's overpayments exceeded its underpayments for each of the tax years in question, the County was never deprived use of the underpayment dollars. Thus, it would be inequitable to allow the County to charge interest on the underpayment, particularly since the County has had free use of the overpayment dollars.

## CONCLUSION

An underpayment of an ad valorem tax is delinquent after the date on which it should have been paid, not on the later date of notification and demand. However, in this case, the taxpayer maintained a credit balance for each of the tax years in question, and, thus, no balance existed upon which to impose interest.

The decision of the district court is reversed and remanded for proceedings consistent with this opinion.