2002 WY 154

**AMOCO PRODUCTION COMPANY,**
Appellant (Defendant),

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SWEETWATER,**
Appellee (Plaintiff).

No. 01–141.

Supreme Court of Wyoming.

Oct. 16, 2002.

Algirdas M. Liepas, of Algirdas M. Liepas P.C., Cheyenne, WY; and Frederick W. Bradley, Nicole Crighton, and Andre Burvant of Oreck, Bradley, Crighton, Adams & Chase, New Orleans, LA, Representing Appellant. Argument by Mr. Bradley.

Nancy D. Freudenthal and John C. McKinley of Davis & Cannon, Cheyenne, WY, Representing Appellee. Argument by Ms. Freudenthal.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] This is an appeal from the entry of summary judgment by the district court concerning the attempt by appellee Board of County Commissioners of the County of Sweetwater ("Sweetwater County") to collect the proportional share of ad valorem tax and interest owed by appellant Amoco Production Company ("Amoco") concerning its undisputed ownership interest in certain real property within Sweetwater County for 1980 through 1985. We affirm.

## ISSUES

[¶ 2] Amoco sets forth the following summarized issues:

1. Did the trial court commit manifest error in failing to hold that the County's claim against Amoco in this suit was barred by principles of *res judicata* and judicial estoppel?

2. Did the trial court act improperly in holding that Amoco was *now* precluded from challenging the correctness of the alleged tax debt?

3. Did the trial court commit error in holding that UPRC (Union Pacific Resources Company) was Amoco's agent for purposes of the County's present tax claim?

4. Did the trial court err in granting summary judgment where its ruling was based on so many unalleged, unsubstantiated and incorrect assertions of fact?

5. Did the trial court properly grant summary judgment in favor of the County?

6. Should the trial court have awarded interest that accrued during that period?

Sweetwater County phrases the issues much more succinctly on appeal as:

1. Is Amoco Production Company (Amoco) liable to Sweetwater County for its proportional share of ad valorem tax and interest on increased mineral value determined by the Department of Revenue attributable to Amoco's undisputed ownership interest?

2. Does a genuine issue of material fact exist to preclude summary judgment for collecting the delinquent ad valorem taxes and interest from Amoco?

---

* Chief Justice at time of oral argument.

## FACTS AND HISTORICAL BACKGROUND

[¶ 3] From 1980 through 1985, Union Pacific Resources Company or its predecessor, Champlin Petroleum Company (UPRC), was Amoco's unit operator for the Higgins Unit, the Brady Unit, the Bruff field and the Siberia Ridge field located within Sweetwater County (Properties). During this time frame, the mineral tax system in Wyoming required unit operators, through self reporting, to report for assessment all oil and gas produced and remit all ad valorem taxes due on such production for all owners. DOR Rules, ch. IX, § 4 (1980) and § 7 (1982). Thus, Amoco did not file any reports with the State and received no tax notices directly from the State or Sweetwater County for the Properties as such business was being transacted through the State or Sweetwater County and UPRC.

[¶ 4] In 1985, State regulations concerning the Wyoming mineral tax system were amended and, in part, allowed take-in-kind owners, like Amoco with respect to the Properties, to file their own reports with the State and directly pay related taxes.[1] DOR Rules, ch. XXI, § 7(c). In addition, in 1989, the State of Wyoming, Department of Audit (DOA) was created to supervise the Wyoming mineral tax system. Wyo. Stat. Ann. § 9-2-2003. Upon its institution, the DOA began to perform oil and gas audits. Likewise, separate from these audits, other counties within Wyoming, including Sweetwater County, began to conduct their own audits primarily through contract arrangements. The contract auditor retained by Sweetwater County reviewed production reports for the Properties and found significant volumes of unreported production for the years 1980 through 1985. These findings were sent to the State of Wyoming, Department of Revenue (DOR) for review and assessment.

[¶ 5] As a result of the audits being conducted by the counties, UPRC filed a declaratory judgment action seeking to preclude or limit these county audits. The named counties in this lawsuit, including Sweetwater

County, responded and filed a counterclaim against UPRC requesting judgment for the additional ad valorem tax amounts due for underreported and undervalued production uncovered by the various county audits. This litigation (UPRC litigation) resulted in a judgment, which, in part, upheld the counties' ability to hire tax auditors and conduct oil and gas audits. This court affirmed that part of the judgment entered in the UPRC litigation through issuance of its opinion in *Union Pacific Resources Co. v. State*, 839 P.2d 356 (Wyo.1992).

[¶ 6] DOR then issued the first additional assessment and a Notice of Valuation Change (NOVC) pertaining to the Higgins Unit to UPRC. Subsequently, this court issued its opinion in *Wyoming State Tax Comm'n v. BHP Petroleum Co., Inc.*, 856 P.2d 428 (Wyo.1993), which held that ad valorem taxes could be assessed against a unit operator as the agent for all working interest owners. However, *BHP Petroleum* also held that the State and counties could not collect the related taxes owed from the other working interest owners by forcing such payment to be made from the involved unit operator. Instead, they were required to collect the owed tax amounts directly from each working interest owner. The issuance of this opinion was followed by DOR issuing the assessments and related NOVCs regarding the Brady Unit, the Bruff field and the Siberia Ridge field to UPRC.

[¶ 7] UPRC timely appealed the assessments for the Properties with the State of Wyoming, Board of Equalization (SBOE) and moved the district court to dismiss the counterclaims of the counties in the UPRC litigation contending that the counties had not joined all working interest owners as indispensable parties. On UPRC's motion to dismiss, the district court ruled that the counties were required to join all working interest owners or were required to restrict their claims for recovery to only those sums owed by UPRC. The counties chose the latter option; and, in 1994, Sweetwater County and UPRC settled the claims concerning the

---

1. Amoco took advantage of these changes and began to both report production and pay its own taxes in 1986.

Properties against UPRC and all its working interest owners, explicitly except Amoco. This settlement specified Sweetwater County retained the right to pursue Amoco for its share of those involved taxes and interests owed regarding the Properties. Given this settlement, the related appeals before the SBOE and the UPRC litigation were dismissed.

[¶ 8] Amoco did not timely appeal or join UPRC in its appeal concerning the NOVCs issued to Sweetwater County concerning the Properties for the years of 1980 through 1985 before the SBOE. Further, although Amoco was aware of the UPRC litigation, it did not participate in that litigation or join in the settlement reached as mentioned above.

[¶ 9] Beginning in 1995, Sweetwater County approached Amoco with respect to the tax and interest owed by Amoco for the years of 1980 through 1985 concerning the Properties. This effort continued until 1999 with no success. After an updated demand was sent to Amoco to pay the amounts owed to which Amoco failed to respond, this action was filed by Sweetwater County against Amoco. The complaint of Sweetwater County alleged Amoco owed unpaid ad valorem taxes and interest on Amoco's proportionate share of mineral value certified by DOR for oil and gas produced from the Properties from 1980 through 1985. While Amoco answered this complaint and disputed that it owed these taxes, Amoco did admit its percentage ownership in each of the Properties. Amoco then filed a motion to dismiss based on jurisdictional issues. Sweetwater County also filed a motion for summary judgment. Ultimately, the motion to dismiss was denied by the district court. However, the district court granted Sweetwater County's motion for summary judgment, and this appeal followed.

### STANDARD OF REVIEW

[¶ 10] Our standard of review is well established. We recently reiterated this standard of review in the case of *Bevan v. Fix,* 2002 WY 43, ¶ 13, 42 P.3d 1013, ¶ 13 (Wyo. 2002):

Summary judgment is appropriate if the record, viewed in the light most favorable

to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.,* 1 P.3d 615, 620 (Wyo. 2000); *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1324 (Wyo.1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994).

We also recognized in *Bevan v. Fix,* at ¶ 26 (citing *In re HC,* 983 P.2d 1205, 1209 (Wyo. 1999) and *Ahearn v. Anderson–Bishop Partnership,* 946 P.2d 417, 422 (Wyo.1997)), we may uphold the grant of summary judgment upon any proper legal ground finding support in the record.

### DISCUSSION

### Res Judicata/Judicial Estoppel

[¶ 11] Initially, Amoco argues the district court erred in failing to hold Sweetwater County's claim against Amoco was barred by the principles of res judicata and judicial estoppel. In essence, Amoco contends Sweetwater County was estopped from bringing this action against Amoco because the County's counterclaim in the UPRC litigation was dismissed with prejudice upon settlement. Thereby, Amoco asserts Sweetwater County is precluded from relitigating the issues that could have been litigated previously in the UPRC litigation.

[¶ 12] In *Eklund v. PRI Environmental, Inc.,* 2001 WY 55, ¶¶ 15–20, 25 P.3d 511, ¶¶ 15–20 (Wyo.2001), we extensively recognized that res judicata and collateral estoppel are related but distinct concepts.

Res judicata bars the relitigation of previously litigated **claims** or **causes of action.** *Slavens v. Board of County Commissioners,* 854 P.2d 683, 686 (Wyo.1993). Four factors are examined to determine whether

the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.* Collateral estoppel bars relitigation of previously litigated *issues* and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

The proper doctrine for our consideration is collateral estoppel. As noted, res judicata applies to claims or causes of action. The prior adjudication involved a claim by Ash against PRI, while this action concerns a claim by Eklund against PRI. While the two proceedings arose out of the same incident and involve the same defendant, they are clearly separate claims arising out of injuries personal to each plaintiff. The question Eklund has raised relates to the *issue* of whether Tebben was acting within the scope of his employment at the time of his alleged negligent act. Eklund posits that consent decrees, settlements, and voluntary dismissals constitute a "judgment on the merits." Eklund argues that an admission by PRI that Tebben was acting within the scope of his employment is a necessary predicate of the settlement with Ash and, accordingly, PRI is precluded from contesting the issue in this litigation.

We have considered consent judgments and dismissals with prejudice to be the equivalent of a judgment on the merits for purposes of res judicata. In *CLS v. CLJ,* 693 P.2d 774 (Wyo.1985), the appellant failed to appear at trial, and his suit to establish paternity was dismissed with prejudice pursuant to W.R.C.P. 41(b). A second suit raising the same claim was subsequently filed. We held that the appellant was barred by the doctrine of res judicata from bringing the same claim because an involuntary dismissal under Rule 41(b) operated as an adjudication of the merits. 693 P.2d at 777.

In *Day v. Davidson,* 951 P.2d 378 (Wyo. 1997), Day had filed an action based on vicarious liability against Pamida, Inc. based on the negligent acts of one of its employees. Day accepted an offer of judgment from Pamida and then subsequently filed an action against the employee based on the negligent act underlying the vicarious liability claim. We held that Day could not bring a subsequent action against the employee based on the fact that, as a vicarious liability situation, the employee was entitled to be credited with the amount of the judgment entered against his employer leaving Day with nothing to recover from the employee. 951 P.2d at 383. While not directly implicating the doctrine of res judicata, *Day,* like *CLS,* concerned the same *claim* brought by the same plaintiff.

The application of res judicata to those situations where a plaintiff attempts to bring the same claim in a subsequent action against the same or different defendants has a logical basis: It encourages resolution of the plaintiff's claims in a single action, and it forces parties to abide by their agreements. The other cases cited by Eklund in his brief also concern the application of res judicata to consent judgments and settlements. See, e.g., *Jefferson v. Greater Anchorage Area Borough,* 451 P.2d 730 (Alaska 1969); *Clark v. Haas Group, Inc.,* 953 F.2d 1235 (10th Cir.1992); and *In re Vern O. Laing,* 31 F.3d 1050 (10th Cir.1994). We are not, however, dealing with res judicata in this case, but rather, with collateral estoppel.

We have never addressed the effect of collateral estoppel on settlements or consent judgments. Other authorities have set forth the rule as follows:

> Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.

...

... In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. *Thus consent judgments ordinarily support claim preclusion but not issue preclusion.*

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4443, at 382–85 (1981) (emphasis added). See also, *Linder v. Missoula County,* 251 Mont. 292, 824 P.2d 1004, 1006–07 (1992); and *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380, 385 (N.D.1992). The logic behind not applying collateral estoppel to settlements and consent judgments absent an expressed intention of the parties to be bound in further proceedings is quite obvious: Application of the doctrine absent an intent to be bound in subsequent proceedings would act as a deterrent to voluntary settlements. If, by settling one lawsuit, a party forsakes the right to challenge all issues at stake in any future litigation, then the incentive to settle short of trial is reduced.

(Emphasis added.)

[¶ 13] Application of the four factors identified above demonstrates that the UPRC litigation did not render Sweetwater County's ability to collect the taxes and interest owed by Amoco concerning the Properties as sought in this litigation res judicata. As admitted by Amoco, Amoco was not a party in the UPRC litigation. Moreover, although Amoco points out that the district court ruled in the UPRC litigation that the counties needed to join the working interests owners, which included Amoco, as indispensable parties if it sought to collect those tax monies owed by these entities, this was not the only option afforded to the counties. In addition, the district court in the UPRC litigation indicated the counties could seek to collect those taxes owed by UPRC without any joinder of additional parties. Specifically, the district court in the UPRC litigation ordered "[t]he Counties are required to join all working interest and mineral interest owners in this action, or alternatively are required to restrict their claims for recovery in this action, to those sums allegedly owned [sic] by UPRC." The counties, including Sweetwater County, merely chose the latter option.

[¶ 14] While an argument exists that the subject matter involved is the same in the UPRC litigation and this action as it concerns Sweetwater County, namely the collection of taxes and interest owed with respect to the Properties, it is clear that distinctly separate issues exist as they relate to this subject matter as between Amoco and Sweetwater County. As stated immediately above, given the ruling of the district court in the UPRC litigation, Sweetwater County along with the other counties involved, chose to proceed against UPRC as opposed to the other involved working interest owners. Therefore, the claim resolved upon settlement of the UPRC litigation was limited to the collection of taxes and interest from UPRC and ultimately those working interest owners who elected to participate in the settlement exclusive of Amoco.

[¶ 15] The language of the settlement reached in the UPRC litigation is also very telling. That settlement by its express terms excludes Amoco and specifically reserves Sweetwater County's ability to pursue Amoco for taxes and interest owed with respect to the Properties. The Settlement Agreement entered into states:

The parties agree that the payment of the above sum is in settlement of all claims Sweetwater County may have against UPRC and all its Sweetwater County interest owners, *except Amoco,* for unpaid gross production (ad valorem) taxes, interest and penalties on oil and gas production occurring during years 1979 through 1988. *This agreement shall not be construed in any way to limit Sweetwater County's right to pursue Amoco for Amoco's share of gross production (ad valorem) taxes and interest due Sweetwater County on Amoco's share of production from UPRC operated properties.*

(Emphasis added.) For those same reasons cited above, we also cannot conclude that the

capacities of Sweetwater County and Amoco are similar in the respective litigations regarding both the subject matter and the issues between them. As already recognized, Amoco was not a party to the UPRC litigation and the specific issues in the respective matters are different.

[¶ 16] Likewise, with respect to the application of collateral estoppel, there is absolutely no evidence that Sweetwater County upon settlement of the UPRC litigation intended to be foreclosed from the collection of taxes and related interest from Amoco regarding the Properties in any subsequent proceeding. In fact, the very contrary is established within the express wording of the settlement agreement entered into in the UPRC litigation. Additionally, as stated previously, the issue decided in the UPRC adjudication was not identical with the issue now asserted against Amoco by Sweetwater County, and Sweetwater County did not litigate in the prior UPRC litigation the issue now asserted against Amoco.

[¶ 17] In *Cross v. Berg Lumber Co.*, 7 P.3d 922, 930 (Wyo.2000) (citing *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo.1976)), we stated that judicial estoppel is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings. Further, we enunciated that judicial estoppel requires that "where a man is successful in the position taken in the first proceeding, then that position rises to the dignity of conclusiveness." *Cross*, at 930 (citing *Erhart v. Flint Engineering & Const.*, 939 P.2d 718, 724 (Wyo.1997); *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 290 P. 561, 566 (1930)).

[¶ 18] In this instance, no contrary position has been taken by Sweetwater County. Sweetwater County simply has sought through both respective litigations to obtain the payment of taxes and interest owed by all parties concerning the Properties. Again, the evidence presented before us establishes

that Sweetwater County intended not to be foreclosed upon settlement of the UPRC litigation from the collection of taxes and related interest from Amoco. In addition, after the settlement agreement had been executed and the district court entered its dismissal in the UPRC litigation, the State, Sweetwater County, and UPRC continued to supply Amoco with audit information that Amoco had requested in the furtherance of Sweetwater County's consistent demand for payment of taxes and interest from Amoco. Finally, at the risk of being redundant, we must again point out that Amoco was not a party to the UPRC litigation. Therefore, it was impossible for Amoco to have been successful in the UPRC litigation concerning the position it now asserts and warrant the conclusive disposition of this matter.

### Foreclosure From Challenging The Claimed Debt

[¶ 19] Amoco asserts the district court erred when ruling Amoco was foreclosed from challenging the amounts set forth in the NOVCs sent to UPRC for the applicable time frame regarding the Properties. In support of this argument, Amoco contends 1) there was no formal valuation of Amoco's property by the DOR; 2) there was no certification of the value of Amoco's property made by DOR to Sweetwater County; 3) Sweetwater County did not assess Amoco's property by entering the value of that property on its rolls;[2] 4) no tax bill was ever issued to Amoco by Sweetwater County; 5) Amoco was never advised of its administrative rights to contest or appeal the tax; and 6) there has never been an administrative adjudication of whether Amoco owes any taxes.

[¶ 20] Initially, it is important to recognize the State regulations, applicable during the time frame involved, mandated unit operators were responsible for filing sworn production returns for the total amounts produced and payment of all the related taxes owed. DOR Rules at ch. IX, § 4 (1980) or § 7 (1982) for the years 1980 through 1985 provided:

---

2. DOR is required to assess mineral production,

not the respective county. See Wyo. Stat. Ann.

The party filing the sworn production return shall be responsible for the payment of the taxes on such production. The actual operator of an oil or gas lease or unit shall report for assessment 100% of the oil or gas produced from the lease or unit.... A return from a producer will be unacceptable if it reports less than 100% of a lease's or unit's production for the year, whether the working interest receive their interest in money or kind.

We further recognized in *Wyoming State Tax Comm'n v. BHP Petroleum Co., Inc.,* 856 P.2d 428 (Wyo.1993) that the practice of valuing all production for assessment through the unit operator and not each working interest owner by DOR was well understood and had been historically followed by DOR. Indeed, in that case this court rejected the assertion that the State of Wyoming and counties within Wyoming would be required to separately assess and issue tax bills to each of the undisclosed working interest owners who did not report their production for separate assessment.

The State contends that not accepting its interpretation of assignee, so as to allow collecting of ad valorem taxes from the unit operator, will make it difficult to collect these taxes. It is said that difficulty will result because the unit operator is responsible for reporting the volume of production and if then each working interest owner is to report their individual volume and the State must assess them pro rata, it will be an administrative nightmare. *This might be possible if our holding were different. We limit the County and State's ability to collect taxes through sale of property, not their ability to assess taxes. We think the hypothetical difficulty is not borne out.* Appellees point out in their brief:

Appellees do not seek to impose an administrative nightmare on the taxing authorities. *The operator will continue to provide assessment data. Tax no-tices may be sent to the operator, as in the past.* The operator will continue to discharge its contractual duty to pay taxes on behalf of other owners (subject, of course, to adequate provisions for reimbursement by them). The operator and other owners who have paid their taxes should not, however, have their property placed in jeopardy because of the failure of a delinquent owner to pay the taxes on production owned and sold by that owner.

*Id.,* at 434–35 (emphasis added).

[¶ 21] As pointed out by Sweetwater County, as a practical matter, the unit operator is the only entity during the applicable time period that could be sent assessment notices from DOR. Likewise, during this time frame, Sweetwater County received assessment notices from DOR that solely identified the unit operator. Hence, Sweetwater County would have also found it impossible to split up the tax owed and separately notify each individual working interest owner.

[¶ 22] When it was discovered, through the audits conducted with respect to the Properties, that UPRC had failed to accurately report the volume and value of all production from the Properties, DOR revalued that oil and gas production and sent increased assessments to UPRC and NOVCs to Sweetwater County as required. In turn, Sweetwater County issued NOVCs to UPRC. As Sweetwater County further points out, the revaluation and reassessment by DOR of 100% of production from the Properties included Amoco's ownership interest as a component part of the increased value, as did UPRC's initial erroneous reports include Amoco's ownership interest as a component of the initial value reported. Finally, the interest of Amoco in each of the Properties involved is established through the admission of Amoco made through its answer to the complaint of Sweetwater County in this case.[3]

§ 39–2–201(a)(i).

**3.** Amoco's admitted ownership in the Properties is a follows:

| Field/Unit | API# or Tax Group | Amoco's interest ownership |
| --- | --- | --- |
| Higgins | 037–G0051/52 | 31.3943% |

[¶ 23] All assessments sent by DOR to UPRC concerning the Properties contained detailed notices that an administrative conference with DOR was allowed, as well as the right to appeal the assessments to the SBOE. These assessments also advised that the assessments would be certified to Sweetwater County for assessment and billing by the county assessor and treasurer when the time frame for appeal had lapsed or when any related appeal was finally resolved.

[¶ 24] Wyoming statutory law and DOR rules for the applicable years clearly provided that an appeal notice must be received by the SBOE within 30 days of the assessment to be deemed timely. Wyo. Stat. Ann. § 39–2–201(d). It is also well recognized that there may be no administrative adjudication of tax liability unless a timely appeal is filed with the SBOE and if no timely appeal is made the tax assessment becomes final. *Antelope Valley Imp. & Serv. Dist. v. State Bd. of Equalization*, 992 P.2d 563, 567 (Wyo.1999). Therefore, Amoco's assertion that there must be an administrative adjudication that it owes any taxes for the additional assessment made by Sweetwater County on the Properties to be deemed valid lacks merit.

[¶ 25] Amoco had an ability to seek a conference with DOR or appeal the additional assessments made against the Properties but failed to do so. In fact, UPRC did appeal these assessments before the SBOE with Amoco failing to join in this effort. Therefore, Amoco waived any right to contest the assessments made against the Properties, and these assessments became final. *In accord, Amax Coal West, Inc. v. State Bd.*

*of Equalization*, 896 P.2d 1329, 1333 (Wyo. 1995).

[¶ 26] In a related argument, Amoco also attempts to argue that UPRC was not its agent and, therefore, the fact that DOR and Sweetwater County gave notice of the additional tax owed to UPRC cannot be attributed as good and proper notice to Amoco. As recited previously, during the applicable time frame it was well established that unit operators were responsible for filing sworn production returns for all production and payment of 100% of the related taxes owed and that ad valorem taxes were assessed solely through the unit operator. Review of the involved operating agreements executed between Amoco and UPRC further establishes a contractual agreement between these entities which confirms this process.

[¶ 27] Specifically, review of the operating agreements executed for the Higgins and Brady units disclose the following:

### ARTICLE 21
### TAXES

21.1 **Payment.** Any and all ad valorem and severance taxes payable upon the Committed Working Interests (and upon Lease Burdens which are not payable by the owners thereof) or upon materials, equipment or other property acquired and held by Unit Operator hereunder, and any and all taxes (other than income taxes) upon or measured by Unitized Substances produced from the Unit Area which are not payable by the purchaser or purchasers thereof or by the owner of Lease Bur-

|  |  |  |
|---|---|---|
|  | 037–20927 | 31.9396% |
|  | 037–20712 | 31.9500% |
|  | 037–21535 | 36.1335% |
|  | 037–20832 | 22.1653% |
| Brady | 037–G0059 | 17.500% |
|  | 037–G0058 | 17.2067% |
|  | 037–G0061 | 17.500% |
|  | 037–G0062 | 33.898% |
|  | 037–20551 | 37.500% |
|  | 037–20642 | 36.3570% |
| Bruff | 037–21479 | 37.50% |
| Siberia Ridge | 037–21690 | 8.97% |

dens, *shall be paid by Unit Operator as and when due and payable.*

. . .

21.4 **Notices and Returns.** Each Party shall promptly furnish Unit Operator with copies of notices, assessments, levies or tax statements received by it pertaining to the taxes to be paid by Unit Operator. *Unit operator shall make such returns, reports and statements as may be required by law in connection with any taxes above provided to be paid by it and shall furnish copies to the parties upon request.* It shall notify the Parties of any tax which it does not propose to pay before such tax becomes delinquent.

(Emphasis added.) In addition, the operating agreements between Amoco and UPRC for the Bruff and Siberia Ridge fields state:

12. *TAXES:*

Any and all ad valorem taxes payable upon materials, equipment and other property acquired and held by Operator hereunder, and any and all taxes (other than income taxes) upon or measured by the oil or gas produced from the Subject Lands which are not payable by the purchaser thereof or by the owners of the royalty, overriding royalty, production payment or similar interests, *shall be rendered and paid by the Operator as and when due and payable.* Taxes upon materials, equipment and other property acquired and held by Operator shall be charged to and borne by the parties owning the same in proportion to their respective interests therein. Taxes upon or measured by production shall be charged to and borne by the parties in proportion to their respective interests in production upon which such taxes are based. Reimbursements from owners of royalty, overriding royalty, production payment or similar interests, on account of taxes paid for such owners, shall be paid or credited to the parties in the same proportions as such taxes were charged to such parties.

(Emphasis added.)

[¶ 28] The plain and unambiguous language used within the operating agreements involved clearly designates UPRC, the unit operator, as the sole responsible party for reporting purposes and for the complete payment of those taxes due and that UPRC was to act as the agent of Amoco for such purposes. The parties obviously intended UPRC to have extensive tax reporting and remittance duties with respect to Amoco and its working interest in the Properties. It reasonably follows that the parties intended that UPRC had the authority to receive tax assessments concerning the Properties, particularly as they may involve Amoco, so as to enable UPRC to accomplish its express reporting and payment of tax responsibilities. To conclude otherwise would be absurd.

[¶ 29] Further, although Amoco argues that the first sentence of article 21, subsection 21.4 of the Higgins and Brady units operating agreements quoted above provides that individual working interest owners were to receive notices, assessments and tax statements, we do not agree. That sentence merely states that if Amoco, as a working interest owner, was to receive notices, assessments and tax statements, it had an affirmative duty to pass them on to UPRC. If notices, assessments, and tax statements were received by UPRC, as the unit operator, as was the case here, this provision simply did not ever become operable. Indeed, this sentence in the operating agreements goes further to clarify that UPRC was to be afforded notice of any tax assessments concerning the Properties received by the working interest owners so that UPRC could meet its expressed contractual reporting and tax payment obligations. Given the administrative regulations in effect during the applicable time frame, the well designated and understood historical practices during that period, and the intent of UPRC and Amoco expressed within each of the operating agreements involved concerning ad valorem tax issues, we hold that UPRC acted as the implied agent, if not the express agent, of Amoco and that notice to UPRC by DOR and Sweetwater County was sufficient notice to Amoco as required by Wyoming law of the additional tax assessed and those administrative rights to contest or appeal the additional

tax assessed in this instance.[4]

[¶ 30]   A taxpayer as a matter of fundamental due process has the right to receive assessment notices that describe in plain terms the basis for the assessment. *Union Pacific R.R. Co. v. Donnellan*, 2 Wyo. 478 (1882). This fundamental right was afforded Amoco through proper and adequate notice being given by both DOR and Sweetwater County through UPRC.

### Assertions of Fact

[¶ 31]   Amoco contends that the district court erred in granting summary judgment because that ruling was based on many unalleged, unsubstantiated, and incorrect assertions of fact and that the district court generally erred in granting summary judgment in favor of Sweetwater County. In making these arguments, Amoco points primarily to statements made by the district court in various decision letters issued in this case. However, upon review of the actual order entered by the district court granting Sweetwater County summary judgment, we do not find that the district court erred in granting Sweetwater County such relief.

[¶ 32]   The action commenced by Sweetwater County against Amoco is, in essence, a collection claim. Simply stated, Amoco is required to pay all taxes on the gross product attributable to its working or non-working interest in the Properties. Wyo. Stat. Ann. § 39–3–101(d). Amoco's ownership interest in the Properties has unequivocally been admitted by Amoco.[5] Therefore, Amoco's undisputed ownership interest establishes the percentage of additional taxes that Amoco owes on the unreported production on the Properties for the years 1980 through 1985 found by the contract auditor retained by Sweetwater County.

[¶ 33]   Amoco's responsibility to remit taxes in proportion to its ownership interest in the Properties matches its agreement with UPRC for apportioning tax liability among the Properties' owners. Indeed, the language from the operating agreements en-

tered into between Amoco and UPRC states that taxes are to be charged to and borne by the parties in proportion to their respective interests in the production upon which these taxes are based. Further, while Amoco asserts that a dispute exists between Amoco and UPRC about the apportionment of the additional tax liability imposed, this dispute is again a private matter to be resolved between Amoco and UPRC and does not prohibit Sweetwater County from collection of the tax owed. Finally, for those reasons set forth above, Amoco waived any ability to contest the additional taxes assessed because it failed to timely contest the assessments made against the Properties, and these assessments are now final.

[¶ 34]   Therefore, while we do not agree with some of the statements made by the district court in its various decision letters, as such statements appear to be inappropriate given the record before us, we conclude that Sweetwater County met its burden of showing that no material question of fact existed in this case and it was entitled to summary judgment as a matter of law. As previously established, we may uphold the grant of summary judgment upon any proper legal ground finding support in the record. *Bevan v. Fix*, at ¶ 26.

### Interest Owed

[¶ 35]   In its final issue, Amoco argues the district court erred by granting Sweetwater County accrued interest. Generally speaking, Amoco seems to assert the district court abused its discretion in awarding Sweetwater County interest regarding the past due ad valorem taxes owed by Amoco under the circumstances. While Amoco acknowledges the rule that interest is to be imposed on tax debts, it contends this court has, through its previous holdings in *Amoco Production Co. v. State Board of Equalization*, 12 P.3d 668 (Wyo.2000) and *Kunard v. Enron Oil & Gas Co.*, 869 P.2d 132 (Wyo. 1994), recognized that equity should be considered in imposing such interest and the

---

4.  Whether or not UPRC provided or failed to provide Amoco with proper notification of the additional tax assessed by Sweetwater County is not a present issue before this court.

5.  See fn. 3.

imposition of interest should not be ordered where delays were caused by the taxing entity's inefficient and ineffective audit of the taxpayer's production. Accordingly, Amoco argues if a tax debt is owed, any delay in collecting this debt was attributable to the tardiness of Sweetwater County and interest should not be awarded on the tax amount owed by Amoco.

[¶ 36] Wyo. Stat. Ann. § 39–3–101 (Michie 1997) provides:

> (a) Taxes provided by this act are due and payable at the office of the county treasurer of the county in which the taxes are levied. Fifty percent (50%) of the taxes are due on and after September 1 and payable on and after November 10 in each year and the remaining fifty percent (50%) of the taxes are due on and after March 1 and payable on and after May 10 of the succeeding calendar year except as hereafter provided. If the entire tax is paid on or before December 31, no interest or penalty is chargeable.
>
> (b) The balance of any tax not paid as provided by subsection (a) of this section is delinquent after the day on which it is payable and *shall* bear interest at eighteen percent (18%) per annum until paid or collected.

(Emphasis added.) The language used within this statute is plain and unambiguous and clearly requires that if a tax is not paid by those dates specified, the tax must be deemed delinquent and interest mandatorily charged. We do not believe that the legislature could have been any clearer in expressing such an intent.

[¶ 37] This court has also recognized that the purpose of interest is to serve as compensation for the use of money, or as a penalty, or it may constitute a part of the tax. Assessing interest only from the date of notification and demand is contrary to this purpose. *Kunard*, 869 P.2d at 135; *Moncrief v. State Bd. of Equalization*, 856 P.2d 440, 445 (Wyo.1993). This court also recently enunciated in *State Dep't of Rev. v. Amoco Production Co.*, 7 P.3d 35, 40 (Wyo.2000):

> In *Kunard*, 869 P.2d at 134, we recognized that when a taxpayer excludes required elements from its reported production, and the exclusion causes an underpayment, the tax is delinquent upon the taxpayer's failure to pay on the date due, not at the later date when the taxpayer is presented with notice and demand of the deficiency.

[¶ 38] Interest is a crucial component of tax delinquency required by law and is intended to partially compensate the taxing authority which has been deprived of the use of the unpaid and overdue tax monies over the delinquency period. Additionally, we believe that to hold otherwise would simply foster underreporting by the taxpayer in hopes that the taxpayer could illegally avoid the payment of tax in total, at least until a subsequent audit uncovered the intentional fallacy and, at minimum, would allow the taxpayer to use such tax monies without the payment of interest thereby rendering the taxpayer's fraud to his sole benefit and the detriment to the taxing authority and the public whom it represents. Given the fact that the Wyoming taxing statutory scheme relies upon reporting by taxpayers, the existence of the assessment of statutory interest provides an incentive to assure the taxpayer truly and accurately submits the required reports. The imposition of statutory interest will also ensure that taxpayers who improperly file inaccurate reports or attempt to delay the taxing process are not unjustly rewarded. *In accord Kunard*, at 135.

[¶ 39] Although Amoco urges this court to apply equity and abate the running of interest and argues that it is Sweetwater County's fault for not having pursued Amoco sooner for the taxes owed, we do not agree with these assertions. In particular, Amoco argues that the case of *Kunard*, at 136, and the reasoning used therein requires the abatement of interest in this instance. However, we find that case distinguishable from this case. In *Kunard*, the taxpayer, Enron, received relief on the running of interest solely because the county had in its possession a credit balance on account. Therefore, because of the credit balance that existed, there never existed an amount of unpaid tax which would initiate the running of interest as called for under Wyo. Stat. Ann. § 39–3–101. As stated in *Kunard*, at 136:

Furthermore, none of the purposes to be served by interest charges are served by assessing interest against a taxpayer who has maintained a credit balance for the taxable period. The taxpayer does not benefit from the free use of the money, and clearly no penalty is necessary to discourage future reporting discrepancies which result in a credit balance.

Finally, this court has held that "[e]quitable considerations will not be entirely disregarded even in tax cases." *Morrison–Knudson Co. v. State Bd. of Equalization,* 58 Wyo. 500, 135 P.2d 927, 939 (1943). Because Enron's overpayments exceeded its underpayments for each of the tax years in question, the County was never deprived use of the underpayment dollars. Thus, it would be inequitable to allow the County to charge interest on the underpayment, particularly since the County has had free use of the overpayment dollars. *In accord State Dep't of Rev. v. Amoco Production Co.,* at 40 (holding that Amoco's deficient tax payment over several given years was not an adequate case for application of the reasoning used in *Kunard* ).

[¶ 40] In this case, Amoco chose not to consent to the audit findings made by Sweetwater County and failed to timely appeal such findings as allowed. Amoco then failed to make any tax payment to Sweetwater County with respect to the additional assessment made. While Amoco contends that it was unable to verify the amount of tax owed because it was not able to obtain the necessary information from UPRC and Sweetwater County, we do not find this to be a valid excuse for non-payment of the tax assessed. Any dispute between Amoco and UPRC is again a private matter, which is not before this court and is frankly not the concern of Sweetwater County. In addition, any dispute concerning the assessment of Sweetwater County for the Properties during the applicable time frame should have been addressed by Amoco through utilization of the proper appellate procedures provided.

[¶ 41] Amoco's argument that Sweetwater County's delay in prosecuting the collection of the tax owed by Amoco is to blame is also specious. No authority exists for the abatement of interest on the proposition that the taxing authority must sue for collection of delinquent taxes. To the contrary, it is well established in Wyoming that the authority to create a taxpayer belongs to the legislature; and, once an entity is legally liable as a taxpayer, that entity cannot shift its tax liability absent a specific statute creating a tax forgiveness exemption. *BHP Petroleum,* 856 P.2d at 434 and *Union Pacific Resources,* 839 P.2d at 372. *See also Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 984 (Wyo.1996). Wyo. Stat. Ann. § 39–3–101(e) also makes it clear that "[f]ailure to send notice, or to demand payment of taxes, does not invalidate any taxes due."

[¶ 42] Established Wyoming case law also provides that there may be no administrative adjudication unless a timely appeal is filed with the SBOE; and if no timely appeal is filed with the SBOE, the assessment becomes final. *Antelope Valley Imp. v. State Bd. of Equalization,* 992 P.2d at 567. Therefore, Sweetwater County's asserted delay in prosecution of the tax owed by Amoco in this case has absolutely no effect on the validity of the tax assessed against Amoco. The advisable approach for a taxpayer who disputes a tax assessment is to timely make payment of the tax assessed thereby abating the accrual of interest. Upon timely payment of the tax, there never will exist an amount of unpaid tax which initiates the running of interest under Wyo. Stat. Ann. § 39–3–101. Of course, the taxpayer must also make sure to timely dispute the assessed tax utilizing the proper procedure available pursuant to established Wyoming law.

### CONCLUSION

[¶ 43] We affirm the action of the district court in granting summary judgment in favor of Sweetwater County and against Amoco in this action.