BROWN, Administrator, Office of Price Administration, v. J. C. PENNEY CO., Inc., et al.

No. 2879.

District Court, D. Wyoming.

July 2, 1943.

Oval A. Phipps, State Atty., and Robert G. Clark, Atty., Wyoming Office of Price Administration, both of Cheyenne, Wyo., for plaintiff.

Clarence A. Swainson, of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge.

This is a suit brought by the Administrator of the Office of Price Administration against the defendant company and the manager of one of its stores under the Second War Powers Act 1942, § 301, 50 U.S.C.A.Appendix, § 633, Section 2(a) (6) of Act June 28, 1940, as amended, and Ration Order No. 17 promulgated thereunder, to enjoin said defendants from violating the provisions of such act and order.

The court upon motion after hearing denied a preliminary injunction without prejudice and set the matter down for trial promptly upon issue being joined for disposition upon the prayer for a permanent injunction. The legal effect of the Second War Powers Act with the authority of the United States District Courts to grant injunctions to enjoin the violation of the act or any rule or regulation promulgated thereunder is not challenged in this suit, neither is it contended that Ration Order No. 17 concerning the sale of shoes was not legally issued and promulgated in accordance with the provisions of the Act of Congress. The controversy revolves around the point as to whether or not the order was violated in such a manner and under such circumstances as to justify the court in concluding that an injunction should be granted against the defendant to insure the prevention of future violations.

The trial was had to determine the circumstances surrounding the alleged violations of the order upon which the prayer for an injunction is predicated. The evidence submitted by both plaintiff and defendant showed that there were few facts in dispute. An outline of the circumstances submitted upon the trial is substantially as follows: The local Office of Price Administration, after the promulgation of Ration Order No. 17, mailed a bulletin to all shoe dealers in the State of Wyoming, including the defendant company. Thereafter a meeting was called of said shoe dealers to meet with the Miscellaneous Products Rationing Administrator in which the order was explained and at which a representative of the defendant company was present. The Ration Order No. 17 was issued some time in February, 1943, and the meeting of dealers called within a day or so thereafter. In the bulletin sent out and at the

490

meeting of shoe dealers the manner of using ration stamps for shoes was discussed and explained. Under Ration Order No. 17, it is provided in substance that the stamp must be torn out of the ration book in the presence of a supplier or employee or a person making delivery for him either when the shoes are ordered or when they are delivered. If the war ration stamp is removed in any other manner or at any other time, it is void. It is provided, however, that when shoes are ordered by mail the stamp may be torn out of the book and sent with the order, but the supplier may not deliver the shoes until he has received the stamp. Having received information at the local office that violations of this provision of the order were taking place, the official in charge, directed two of his employees to undertake what counsel has denominated a "test" form of determining whether or not such violations were taking place. Two women employees of the OPA office were furnished with illegal or detached shoe coupon stamps and sent to the store of the defendant on May 21, 1943, with directions to each purchase a pair of shoes, using the illegal stamp for that purpose. (It is to be understood that the stamp was regular in form, but illegal to be used for the purchase of shoes.) One of such employees purchased a pair of shoes from a salesman, and the other from a saleslady in the shoe department of the defendant's Cheyenne store. Both of the OPA employees acting as decoys removed the stamps from their purses in the presence of the sales agents of the defendant and deposited them with the money for the purchase. These transactions occurred on the same day, approximately two hours apart. At the time the purchases were made, there were several prospective purchasers examining shoes and awaiting service. On account of the difficulty of defendant in securing help, there was only one salesman present on each occasion. The plaintiff's employees testified that the stamps were in the innermost recesses of a bill-fold which was, at least in one case, encompassed in a larger purse from which the removals of the stamps were made at the time the purchase price was tendered. The defendant's employees are frank in admitting that they did not see the stamp detached from the ration book, but having had difficulty with complaining customers about surrendering their ration books, they had assumed that the stamps were taken from the ration books in the purses of the respective purchasers, depending to an extent upon the honesty of the customers whom they felt they were serving.

Evidence was offered tending to show that a great many customers were irritated by the turning over of ration books to allow a clerk to detach the proper stamp, or, in exhibiting the ration book for the reason that the ration book purported to give the age of the holder. This was particularly true of women. The shoes were otherwise purchased in the regular manner and payment tendered and received, and receipts given, the money so paid being the personal property of the OPA employees, with no arrangement with that office for its return. The defendant company is one of a large chain of some sixteen hundred stores located throughout the Continental United States. The head office of the company is maintained in New York City and voluminous and repeated bulletins were sent out from the home office to each store, giving specific instructions in regard to the ration order on shoes and the desire of the company to adhere to it to the letter. Likewise, the local manager had instructed all his employees to strictly observe the rules and regulations. The District Manager of the defendant, whose jurisdiction was over several states, testified that it was particularly the policy of the company to observe the rationing order not only from the standpoint of obeying the law, but from the standpoint of carrying out a policy for the best interests of the defendant company for the reason that there was great difficulty in securing enough shoes to keep on their shelves for the purpose of justifying the continuance of a shoe department in each of their several institutions. The foregoing is, in substance, the facts disclosed upon the trial.

The problem presented to the court would seem to be best solved by examining the facts to determine two fundamental questions: (1) Did the violations amount to mere inadvertence, or were they attributable to a design to avoid the order or to such carelessness as would render the ration order ineffectual? (2) Is the danger of future violations so imminent as to justify a court injunction?

 It is apparent that the transactions as conducted by the employees of the defendant were not in the strict sense in accordance with the ration order inasmuch as the employees did not actually see the stamps torn from the ration book, but they

assumed from the manner in which the transaction took place that they were torn from the book by the purchasers as these books were supposed to be in the purses from which the stamps were produced. The employees of the defendant company themselves were fully aware of the provisions of the ration order and according to their testimony were making an honest effort to adhere to it in every particular as they had been enjoined by their superiors at all times. It would, therefore, appear from the evidence that there was perhaps more or less careless action on the part of the employees in conducting the transaction with the coupons rather than any intent to wilfully violate the provisions of the order.

As to the danger of future violations, there is no evidence of threats or any intention on the part of the defendant to violate the order in the future except as it may be inferred from the two violations testified to. In fact, the complaint does not allege that there is a threat of future violations except in the paragraph which sets forth that in the judgment of the plaintiff the defendants are continuing their practice of exchanging rationed shoes for void ration stamps, although there is no evidence of the continuing practice except as may be inferred from the two isolated transactions.

 It should be borne in mind that merely because the Second War Powers Act permits District Courts to grant injunctions in furtherance of enforcing the act, the basic grounds upon which courts act in extending the strong arm of injunction have not thereby been enlarged. At least we have seen no decisions to that effect. It is a well-established doctrine that ordinarily injunctions issue only in cases where the complainant's civil rights have been invaded. Injunctions do not ordinarily issue to prevent acts merely because they are immoral, illegal or criminal. Means are afforded in courts of law for the ordinary vindication of rights which have been violated. Again, it is not a sufficient ground that injurious acts may possibly be committed but there must be at least reasonable probability that the injury will be done if no injunction is granted. And there must be more than the mere fear or apprehension. The purpose of an injunction is not to afford a remedy for what is past, but to prevent future wrongful acts. In order to justify the court in granting an injunction it must be apparent that the injury resulting from the acts alleged are continuing in their nature. The foregoing general principles have been announced in 32 C.J. p. 41 et seq.

 It has also been laid down as a fundamental principle that courts will not grant an injunction to prevent in the future that which in good faith has been discontinued before the suit for injunction was brought, and where there is no evidence that the offense is likely to be repeated in the future. Walling, Adm'r v. T. Buettner & Co., 7 Cir., 133 F.2d 306, and cases there cited. Courts of equity are not used to punish past offenses but only in a proper case to prevent wrongdoing in the future. Walling v. T. Buettner & Co., supra. It is a fundamental principle that the granting or refusal of an injunction rests in the sound discretion of the court under the circumstances and the facts as disclosed in each particular case.

 Viewing the facts here in the light of the principles of law which have been announced, the court cannot feel itself justified in issuing the injunction prayed for. The transactions themselves including the receiving of the ration stamps, are not in any way conclusive of an intention on the part of the defendant's employees to violate the order. Had the attempt been made by the employees of the plaintiff in the so-called "test" to purchase shoes with detached stamps, clearly disclosing that they were detached, and the employees of the defendant had succumbed to this gesture, it would have been evident that there was a studied intention to violate the order. But the manner in which the purchases were made leaves these employees with a fair showing of good faith on their part. More compelling, is the failure of the evidence either direct or by inference to lead the court to the conclusion that there is any danger of future violations. In fact, it is entirely probable that a mere calling attention to the irregularity which was discovered would have been as effective as a court suit in the premises.

Lastly, it may be observed that while there is an announced desire by counsel for plaintiff not to injure the defendant through securing an injunction, the practical result would be nevertheless quite a severe punishment in the way of a reflection on its patriotism and the high-class trade standards which it attempts to main-

tain, accentuated by the fact that it is engaged in business in many different communities.

For the reasons stated, the judgment of the court will be that the prayer for injunction be denied and plaintiff's cause of action be dismissed, with costs.

If it is the desire of either party to have findings of fact and conclusions of law as a basis for appellate procedure, they may be submitted through collaboration of counsel within twenty (20) days from the date hereof.