Hiram BURBANK, Appellant, (Plaintiff),

v.

WYODAK RESOURCES DEVELOP-
MENT CORP., a Delaware corpo-
ration, Appellee (Defendant).

No. 99–291.

Supreme Court of Wyoming.

Oct. 12, 2000.

Representing Appellant: Weston W. Reeves and Timothy W. Miller of Reeves & Miller, Casper, WY. Argument by Mr. Miller.

Representing Appellee: Francis E. Stevens of Stevens, Edwards & Hallock, P.C., Gillette, WY, and Penny Tibke Platnick of Morrill Thomas Nooney & Braun, LLP, Rapid City, SD. Argument by Ms. Platnick.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

Hiram Burbank appeals the district court's order granting summary judgment in favor of his former employer, Wyodak Resources Development Corp., on his breach of employment contract claim. We find that the employee handbook unambiguously gives Wyodak the discretion to discharge employees who test positive for alcohol while at work and affirm.

### ISSUES

Burbank states the issues as follows:

Whether the district court erred by reading the positive discipline and discharge provisions out of the parties' employment contract.

Wyodak states the issue as follows:

Whether the Trial Court was correct in holding that as a matter of law, Wyodak did not breach its contract with Burbank when it fired him.

### FACTS

In accord with our standard of review, we present the facts in the light most favorable to Burbank. Burbank was hired by Wyodak's parent company in 1975. Six years later, he was transferred to Wyodak Mine where he worked as a mechanic until his termination in 1997. The employee handbook which Wyodak distributed to its employees and which is at issue here contains a section entitled "Your Program of Protection." Burbank cites us to the following provisions of that section which he contends are relevant to his appeal:

### POSITIVE DISCIPLINE

The goals and objectives of the Positive Discipline program are:

- Emphasize correcting the problem rather than punishing the offender.
- Maintain the employee's dignity and self-respect.
- Provide for increasingly serious steps if the problem is not resolved.
- Result in the employee's changing his behavior and becoming a good performer.

Discipline is probably the most difficult and unpleasant part of a supervisor's job. But, discipline must be maintained—employees must come to work every day, follow the Company's policies and rules, and do their jobs properly.

For most people, the only "discipline" that will be required during their working careers is the training and coaching they receive from the supervisors. However, in spite of all Management's positive strategies, discipline problems still arise. When they do, supervisors will take effective action to correct the problem and have the employee return to being a good performer.

### A. Counseling

Discipline is generally the last resort a supervisor will use to correct a performance problem. Usually when supervisors have identified a performance problem, they will first discuss the problem with the employee in a supportive, nonpunishing manner. The objective of counseling is to help the employee recognize that a problem exists and develop effective solutions to resolve it.

### B. Examples of Cause

From time to time, however, problems may arise that cause management to apply discipline to an employee. For purposes of illustration only, cause for discipline shall include, but not be limited to equipment damage, insubordination, theft, use of intoxicants or other controlled substances, reporting to work under the influence of intoxicants, drugs, or other controlled substances, incompetence, fighting, failure to perform work required, failure to report an accident, unexcused absences, horseplay, failure or refusal to observe Company rules (see Company bulletin boards and Administrative Guidelines for Positive Discipline distributed 10/3/83), unbecoming conduct, conviction of a felony, or violation of a term of this Handbook.

### C. Steps of Positive Discipline

When Mine Management, after investigation, determines that cause exists, it is the Company's policy to apply the following disciplinary steps; bearing in mind that Mine Management reserves the right to accelerate discipline based upon the severity of the offense requiring discipline and the employee's past work performance:

1. Oral Reminder
2. Written Reminder
3. Decision Making Leave

. . .

### D. Crisis Suspension

Occasionally, a performance problem may occur which is so severe that it requires immediate attention and action. If this should happen, an employee may be sus-

pended and a meeting will be held prior to the employee returning to work to determine whether the offense warrants discipline or termination.

. . .

## DRUG AND ALCOHOL POLICY

To provide the safest work environment possible for you and your fellow workers, it is mandatory that each employee have total control of their faculties and be fit for duty. When there is reasonable belief that an employee is unfit for duty because of the use of alcohol or drugs while on Company property or duty, the employee may be required to take applicable tests. . . . If the test result proves to be unsatisfactory, the employee will be suspended immediately without pay pending further investigation and may be discharged.

. . .

## DISCHARGE

Discharge is not a step of the Positive Discipline system. Discharge will normally occur after all the steps have been taken and there is no change in performance or behavior. It also occurs when an employee commits an act so serious that continued employment cannot be accepted.

. . .

You may be discharged for violating any of the rules contained in this Handbook.

On December 11, 1997, Burbank passed his final welding test and went to a local bar with his welding instructor and classmates to celebrate. At about 5:30 the following morning, Burbank called in and asked to take a personal day off. His request was denied, and he was told to come to work. Burbank arrived at work shortly after 6:00 a.m. He spoke with his foreman, who smelled alcohol on his breath; worked briefly with another foreman, who also smelled alcohol on his breath; and then, on the basis of reports from the two foremen, was asked by the safety director to take a drug and alcohol test. Burbank was taken to the hospital where two breathalyzer tests and a urinalysis were performed. The results of the breathalyzer tests were positive for alcohol. Bur-

bank was suspended for three days pending the results of the urinalysis, which also proved positive. On December 17, 1997, following an investigation and a meeting attended by several Wyodak representatives, Burbank was terminated.

Burbank brought suit against Wyodak on October 30, 1998, claiming breach of contract and breach of the implied covenant of good faith and fair dealing. On June 23, 1999, Wyodak moved for summary judgment as to both of Burbank's claims. Following a hearing on July 19, 1999, the district court denied the motion as to the breach of contract claim and granted the motion as to the claim for breach of the implied covenant. In its order of July 27, 1999, the court held that the employee handbook constituted an implied employment contract as a matter of law and that genuine issues of material fact existed as to whether Wyodak breached the contract when it terminated Burbank. On August 19, 1999, Wyodak filed a request for leave to file a motion for reconsideration along with the motion and brief. Although no order appears in the record, the request was apparently granted because Wyodak filed a motion for reconsideration and supporting brief on September 2, 1999. After a telephone hearing on September 17, 1999, the district court entered an order granting Wyodak's motion for reconsideration and its motion for summary judgment as to the breach of contract claim, finding that the implied employment contract unambiguously gave Wyodak the right to terminate an employee who tested positive for alcohol and that no factual dispute existed that Burbank tested positive for alcohol. The district court dismissed the complaint in its entirety, and Burbank timely appealed to this court.

### *STANDARD OF REVIEW*

■ Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.,* 1 P.3d 615, 620 (Wyo.2000). A fact is material if it establishes or refutes an essential element of a claim or defense. *Id.*

In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decision on issues of law. *Id.*

## DISCUSSION

■ The parties agree that the issue to be decided is whether the contract unambiguously provides that Wyodak may summarily discharge an employee who tests positive for alcohol while at work, without following the steps outlined in the progressive discipline procedure. We start, then, from the premise that the terms of the employee handbook constituted an implied-in-fact contract. From that premise, it is our task to construe the meaning of the contract.

■ Where the terms of a contract are clear and unambiguous, its meaning is to be construed by the court as a matter of law. *Ormsby v. Dana Kepner Co. of Wyo., Inc.,* 997 P.2d 465, 469 (Wyo.2000) (citing *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642, 645 (Wyo.1996)). It is only where the meaning of a contract is ambiguous that its construction becomes a mixed question of law and fact to be determined by the factfinder at trial. *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1176 (Wyo.1997). If we determine, as did the district court, that no doubt exists as to the meaning of the contract and that it is capable of being understood only one way, then no genuine issue of material fact exists and summary is appropriate. *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996). If we decide, however, that doubt exists as to the contract's meaning and that it is capable of being understood in more than one way, a genuine issue of material fact exists and summary judgment is not appropriate. *Id.*

■ In determining whether a contract is capable of being understood in only one way, we consider the contract as a whole, reading each part in light of all other parts and giving meaning to all of the language used if that can be done and a reasonable construction achieved. *Id.* at 690. We presume that a particular provision is included in the contract for a purpose and strive to avoid a construction which renders any provi-

sion meaningless. *Id.* Provisions which seem to conflict are to be reconciled where possible so that neither provision is nullified. *Id.* Common sense and good faith are the leading characteristics of contract construction. *Id.*

Applying these principles to the employment contract before us, we find that the contract unambiguously authorizes the employer to discharge an employee who tests positive for alcohol. The intoxication/drug use provision clearly states that an employee suspected of being under the influence of alcohol must submit to testing and, where the test result is positive, the employee will be suspended immediately and may be discharged. Although the Examples of Cause provision of the handbook suggests that reporting to work under the influence of alcohol is cause for discipline, and thus for following the three-step procedure for positive discipline rather than immediately discharging the employee, the Steps of Positive Discipline provision also authorizes the employer to accelerate discipline. Implicit in this provision is the authority of the employer to move directly to the third step of the positive discipline procedure—decision making leave—which may be followed by termination.

That is in essence what happened here. Following the positive breathalyzer results, Burbank was suspended pending the results of the urinalysis. While Burbank was on suspension, an investigation was conducted. Following the investigation and while Burbank was still on suspension, a meeting was held at which time the decision was made that he should be discharged. Under these circumstances, even under the disciplinary provision of the handbook, Wyodak was within its rights to discharge Burbank.

Burbank argues that construing the contract in this manner nullifies the positive discipline and discharge provisions of the employment contract. Reading those provisions in light of the other provisions of the handbook, they clearly and unambiguously evince an intent that the three-step disciplinary procedure is to be followed in most cases while still giving the employer the discretion

to summarily discharge in specified circumstances. One of those circumstances is when an employee tests positive for alcohol. There is no dispute that Burbank tested positive for alcohol. Under the terms of the contract, therefore, Wyodak was authorized to discharge him without first following the steps outlined in the progressive discipline procedure.

## CONCLUSION

We affirm the trial court's order granting summary judgment in favor of Wyodak on the breach of contract claim and dismissing the complaint.