2001 WY 18

**In the Matter of the ESTATE OF Robert Griffin CORPENING:**

**Helen Cook Corpening, duly qualified, and acting Personal Representative of the Estate Of Robert Griffin Corpening, Deceased, Appellant (Respondent),**

v.

**Griffin P. Corpening and Gregory S. Corpening, Appellees (Petitioners).**

No. 00–95.

Supreme Court of Wyoming.

Feb. 22, 2001.

Representing Appellant: C.M. Aron and Janice Rerucha of Aron and Hennig, Laramie, WY. Argument by C.M. Aron.

Representing Appellee: Catherine MacPherson and John A. MacPherson of MacPherson Law Offices, LLC, Rawlins, WY. Argument by Catherine MacPherson.

Before LEHMAN, C.J., and THOMAS,* GOLDEN, HILL, JJ, and SPANGLER, D.J. (Ret.).

GOLDEN, Justice.

[¶1] Appellant, the Personal Representative of the Estate of Robert Griffin Corpening (PR), brings this appeal from the district court's decision granting summary judgment in favor of Griffin P. Corpening and Gregory S. Corpening (Griffin and Gregory) on the issue of interpretation and construction of a real estate option contract. We affirm.

## ISSUES

[¶2] PR presents the following issues for appeal:

1. Is a contract ambiguous as a matter of law where opposing parties urge two contradictory interpretations of it?

2. What was the intent of the parties to a mutual option, or buy-sell, agreement

with regard to the involuntary sale of a property interest from a widow or other donative transferee after one party's death?

3. Where a mutual option agreement expressly provides for sale of the property interest only when a party voluntarily chooses to sell, can a Court impose on each party's donative and testamentary transferees the obligation to sell involuntarily?

4. Can an option agreement executed prior to execution of a person's will be construed to have intended a result contrary to the will?

5. If a contract relating to real estate is susceptible to two interpretations, does the one which opposes forfeiture control as a matter of law?

Griffin and Gregory present one issue:

1. Whether the District Court erred in granting summary judgment pursuant to Rule 56(c), W.R.C.P., in favor of Appellees?

## FACTS

[¶3] The basic facts are not in dispute. Robert Griffin Corpening (Decedent) and Griffin and Gregory are brothers. Each brother owned an undivided one-third interest as tenants in common of certain ranchland near Saratoga commonly referred to as the "Cedar Creek Ranch."

[¶4] In 1978, the three brothers executed a "Real Estate Option" regarding Cedar Creek Ranch. The Real Estate Option consists of a declaration of ownership by the three brothers and thereafter five numbered paragraphs. Generally, paragraph one provides for two brothers to purchase the interest of a third brother for a fixed price should the third brother wish to sell his interest. Paragraph two specifically relates back to paragraph one and provides a mechanism for the physical partitioning of the property should the two brothers not wish to purchase the interest of the third brother wishing to sell. Paragraph three provides for two brothers to purchase the interest of a third brother should the interest of the third

* concurred prior to retirement

brother be threatened with "alienation." Paragraph four provides for one brother to purchase the interest of two brothers should two brothers have their respective interests threatened with "alienation." Paragraph five provides that, upon the death of one brother, the surviving two brothers "shall have the same exclusive option as set forth in paragraph numbered one, hereof."

[¶ 5] In 1989, Decedent executed a will leaving his interest in Cedar Creek Ranch to his wife, PR. Decedent died in 1998. After Decedent's death, Griffin and Gregory gave notice to PR that they intended to exercise their option to buy Decedent's share of Cedar Creek Ranch. PR refused to sell. Griffin and Gregory contend that the language at issue in the Real Estate Option grants them the right to purchase Decedent's one-third interest in Cedar Creek Ranch upon the death of Decedent. PR contends that the language at issue in the Real Estate Option allows Griffin and Gregory to purchase Decedent's one-third interest in Cedar Creek Ranch upon the death of Decedent only if PR should wish to sell.

[¶ 6] Griffin and Gregory filed a petition with the district court for specific performance of the Real Estate Option. Both sides moved for summary judgment. The district court granted summary judgment in favor of Griffin and Gregory.

## DISCUSSION

[¶ 7] The issues before this Court are the propriety of the district court in granting summary judgment and the interpretation and construction of the Real Estate Option. A summary judgment is appropriate and is correctly entered only where there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Century Ready–Mix v. Campbell County,* 816 P.2d 795, 798 (Wyo. 1991); W.R.C.P. 56(c). "We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question." *Hovendick v. Ruby,* 10 P.3d 1119, 1122 (Wyo. 2000). "In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unam-

biguous." *Sowerwine v. Keith,* 997 P.2d 1018, 1020 (Wyo.2000).

[¶ 8] Our standards for interpreting contract language are well-settled:

Whether a contract is ambiguous is a question of law. *O'Quinn Enterprises [v. Central Wyoming Regional Water System Joint Powers Board* ], 975 P.2d [1062,] at 1064 [ (Wyo.1999) ]. When deciding whether a contract is ambiguous, we endeavor to determine the intention of the parties. *Wolter [v. Equitable Resources Energy Company* ], 979 P.2d [948,] at 951 [ (Wyo. 1999) ]. An ambiguity exists when a contract's language conveys an obscure or double meaning. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997). When contract provisions are not ambiguous or uncertain, the document speaks for itself. 937 P.2d at 209. With an unambiguous agreement, we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the document.

*Sowerwine,* 997 P.2d at 1020.

[¶ 9] The pertinent language of the Real Estate Option at issue in this appeal is as follows:

1. That should any Party hereto wish to sell his ⅓ interest in the above property, then and in that event, the other two Parties shall have the exclusive option to purchase such interest for the sum of $43,450.00 . . . .

* * *

5. Also, in the event of the death of any of the Parties hereto, the surviving Parties shall have the same exclusive option as set forth in paragraph numbered one, hereof, to either purchase the deceased Party's interest for $43,450.00 or if they elect not to purchase to designate the two-thirds of the acreage of the property they wish as their share, and the representative of the deceased Party, shall, thereupon execute and deliver to them a deed for such interest, upon such two Parties executing and delivering to the representative a deed for the deceased Party's one-third interest.

[¶ 10] Both sides to this dispute moved for summary judgment below, arguing that the language of the Real Estate Option is unambiguous. PR attempts to advance an alternative argument that because the two sides urge different interpretations, the Real Estate Option must be ambiguous as a matter of law. It is well-settled that a contract is not ambiguous simply because the parties urge varying interpretations. *Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo.2000) ("disagreement between the parties as to the Agreement's meaning does not give rise to an ambiguity"); *Simek v. Rocky Mountain, Inc.*, 977 P.2d 687, 690 (Wyo.1999) ("parties' subsequent disagreement about the meaning of a contract does not establish an ambiguity").

[¶ 11] Upon examination of the Real Estate Option as a whole, we agree with the district court and find that the Real Estate Option is unambiguous as to the question here presented. When read as a whole, the Real Estate Option clearly provides for a purchase option triggered by the occurrence of any one of three distinct events: one party's wish to sell; threatened alienation of the interest of any one or two of the parties; or the death of one party. Thus, the death of one party and one party's desire to sell are two separate and distinct triggering events. It follows that the language in paragraph 5— "[a]lso in the event of the death of any of the Parties hereto, the surviving Parties shall have the same exclusive option as set forth in paragraph numbered one, hereof"—refers solely to the option to purchase set forth in paragraph one of the Real Estate Option and not to the triggering language or any other language of paragraph one.

[¶ 12] The death of a party would have no independent consequence if the surviving brothers could only purchase Decedent's property if PR desired to sell. Paragraph one covers the situation of a party wishing to sell. Further, the language of paragraph five concerning the partitioning of the property if the surviving brothers do not elect to purchase would have no meaning whatsoever because paragraph two covers the situation if the parties elect not to purchase under the terms of paragraph one. "We must avoid construing a contract so as to render one of its provisions meaningless, since each provision is presumed to have a purpose." *Moncrief v. Louisiana Land & Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993) (citing *Wyoming Game and Fish Comm'n v. Mills Co.*, 701 P.2d 819, 822 (Wyo. 1985)). The purpose of paragraph five is to allow the surviving two brothers to purchase the interest of the third brother upon the death of the third brother.

[¶ 13] Because we have determined that the Real Estate Option is unambiguous, extrinsic evidence cannot be used to help construe the language of the Real Estate Option. The language of Decedent's will is thus irrelevant to these proceedings. We note, however, that nothing in this interpretation of the Real Estate Option contradicts the terms of Decedent's will. In his will, Decedent leaves his "share of the ranch" to PR. Decedent's share of the ranch is his undivided one-third interest in the ranch subject to any liabilities including the terms and conditions of the Real Estate Option. No forfeiture is being effected under the interpretation and construction of the Real Estate Option adopted by the district court and approved by this Court.

[¶ 14] Because the Real Estate Option unambiguously grants Griffin and Gregory the right to purchase Decedent's one-third share of Cedar Creek Ranch at a set price upon the death of Decedent, the judgment of the district court is affirmed.