2003 WY 15

**POLO RANCH COMPANY, and John N. Morris and Norma B. Morris, Appellants (Plaintiffs),**

v.

**CITY OF CHEYENNE, Board of Public Utilities, Appellee (Defendant).**

No. 01–92.

Supreme Court of Wyoming.

Jan. 30, 2003.

Henry F. Bailey, Jr. of Bailey, Stock and Harmon, P.C.; and Steven F. Freudenthal of Herschler, Freudenthal, Salzburg & Bonds, Cheyenne, WY, Representing Appellants. Argument by Mr. Bailey.

J. Kent Rutledge and James C. Kaste of Lathrop & Rutledge, P.C.; and Matthew H. Romsa of Romsa Law Office, P.C., Cheyenne, WY, Representing Appellee. Argument by Mr. Rutledge.

Before HILL, C.J., and GOLDEN, LEHMAN,* and KITE, JJ., and ROGERS, D.J.

LEHMAN, Justice.

[¶ 1]   This is an appeal from the partial entry of summary judgment by the district court ruling 1) that appellants Polo Ranch Company, John N. Morris, and Norma B. Morris (collectively "PRC"), do not have any right to drill for subsurface water on the lands subject to a 1955 agreement ("Agreement") entered into between John H. Bell ("Bell"),[1] predecessor to PRC, and appellee City of Cheyenne Board of Public Utilities ("City"); 2) that PRC is barred by the doctrine of *res judicata* from relitigating the meaning of the term "exclusive" as used within the Agreement;  and 3) that the grant of exclusive drilling rights to the City within the Agreement did not violate public policy. We affirm.

### ISSUES

[¶ 2]   PRC advances these issues:

I.   Whether the court erred by failing to rule that under the prior appropriation doctrine, the [City's] exclusive right to drill for groundwater within the agreement area between 1956–1958 does not preclude Polo or its successors in interest from later developing groundwater subject to administration by the Wyoming State Engineer's

---

* Chief Justice at time of oral argument.

1.  The Agreement was also executed by Bell's wife, Ella Marie Bell, who was "joined to release any interest she may have in the subject premises for the purposes of this agreement."

office consistent with the [City's] prior adjudicated rights?

II. Whether the court erred by failing to rule that since the [City] has established its senior appropriations as contemplated by the exclusive drilling provision of the 1955 agreement, subsequent groundwater use by plaintiffs and their successors in interest within the agreement area should not be charged against plaintiff Polo Ranch Company's annual entitlement under the 1955 agreement?

III. Whether the court erred in ruling that the City's "exclusive" right was established in prior litigation even though that issue was not actually and necessarily litigated in the prior case?

City restates the issues as:

I. Is Polo Ranch barred from re-litigating issues related to the extent, scope, and validity of the City's exclusive right to drill for underground water on lands covered by the 1955 Agreement?

II. If not, is the City's exclusive right to drill for underground water on lands covered by the 1955 Agreement effective as against Polo Ranch and its successors in interest?

III. If not, does the City's exclusive right to drill for underground water on lands covered by the 1955 Agreement violate public policy?

IV. If not, does the City have, and must it resort to, an administrative remedy?

V. Did the trial court correctly determine that water produced and used by Polo Ranch's successors in interest, in violation of the City's exclusive drilling rights should be charged against Polo Ranch's annual free allocation of water?

### FACTS AND HISTORICAL BACKGROUND

[¶ 3] On September 29, 1955, the Agreement was entered into between Bell and the City.[2] The essence of the Agreement was to give the City the right to drill for subsurface water under the lands of what is now known as Polo Ranch and to use the water produced therefrom, subject to delivery of a portion of the water to Bell. The Agreement was properly recorded with the Laramie County Clerk and filed with the Wyoming State Engineer. The Agreement was entered into for the benefit of the "executors, administrators, heirs and assigns of the parties," thereby obligating and binding PRC as Bell's successor in interest. The Agreement has not since been amended, and no other contracts have been entered into between PRC and the City that govern the pumping of water from under the lands described in the Agreement.

[¶ 4] On August 2, 1990, the City filed a complaint against PRC for recovery of pumping expenses owed by PRC under the Agreement.[3] Numerous claims, counterclaims, and the assertion of affirmative defenses followed. On September 4, 1992, the district court entered an order stating 1) that the Agreement was clear and unambiguous and that the City had the exclusive right to develop and use the Polo Ranch groundwater, and 2) that PRC was restricted from utilizing its share of the water on lands other than those described in the Agreement, and was prohibited from selling the water. The City then filed an amended and supplemental complaint which requested that the district court issue a declaration that the City had the exclusive right to drill the subsurface water on the lands described in the Agreement. Ultimately, all unresolved claims went to bench trial before the district court.

[¶ 5] On June 18, 1996, the district court issued its findings of fact and conclusions of law that stated that the lands contained within the subdivision developed by Polo Ranch remained subject to the 1955 Agreement, as there had been no action by the City releasing these lands from the Agreement, and that the City retained the exclusive right to drill wells on that land in the future. However, the court also provided that because the City took no action when it knew or should

---

2. This recitation of facts is based upon the record before us, as well as this court's previous opinion in *Polo Ranch Co. v. City of Cheyenne*, 969 P.2d 132 (Wyo.1998) involving the same parties as are involved in the instant matter.

3. This action will be hereinafter referred to as the "previous litigation."

have known that the land would be used for residential purposes which would require wells, the City had waived any right to charge the existing residential production against PRC's allocation under the Agreement. Later, the district court's judgment was entered which confirmed the district court's ruling.

[¶ 6] This judgment was then appealed to this court. However, such appeal was limited in scope to the validity of the district court's rulings 1) that the City had complied under the Agreement concerning its duty to develop wells on the specified land; 2) that the City could properly require PRC to pay for backflow prevention necessary to protect the City's water system; and 3) that the City could require PRC to disconnect its taps from the City's lake lines or enter into an agreement concerning such water usage. No appeal was taken as to the City's exclusive right to develop and use the Polo Ranch groundwater, including PRC's assertion that the Agreement violated public policy. *See Polo Ranch Co. v. City of Cheyenne,* 969 P.2d 132, 135–36 (Wyo.1998).

[¶ 7] The present litigation was commenced on October 7, 1997, when PRC filed its complaint seeking recovery of hay crop losses allegedly incurred in 1996 as a result of the City's refusal to provide irrigation water as required under the Agreement. On January 8, 1998, the City filed a First Amended Answer and Counterclaim which, in part, requested a declaratory judgment concerning the extent and scope of the City's exclusive right to drill and use subsurface water pursuant to the Agreement. PRC filed its amended complaint on May 14, 1999, which added a claim for declaratory judgment concerning the extent and scope of the exclusive right to drill clause within the Agreement. The City then added additional claims, in part, requesting a declaratory judgment prohibiting PRC from drilling for underground water. Subsequently, the parties filed cross motions for summary judgment, with the district court ruling PRC did not have any right to drill for subsurface water on the lands subject to the Agreement; PRC was barred by the doctrine of *res judicata* from relitigating the meaning of the

term "exclusive" as used within the Agreement; and that the grant of exclusive drilling rights to the City within the Agreement did not violate public policy. The district court then entered final judgment on less than all claims in this case pursuant to W.R.C.P. 54(b), and this appeal followed.

### STANDARD OF REVIEW

[¶ 8] Our standard of review is well established. We recently reiterated this standard of review in *Amoco Prod. Co. v. Board of County Comm'rs of County of Sweetwater,* 2002 WY 154, ¶ 10, 55 P.3d 1246, ¶ 10 (Wyo.2002) (quoting *Bevan v. Fix,* 2002 WY 43, ¶ 13, 42 P.3d 1013, ¶ 13 (Wyo.2002)):

> Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.,* 1 P.3d 615, 620 (Wyo.2000); *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 275 (Wyo. 1997); *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1324 (Wyo. 1995). In evaluating summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994).

We also recognized in *Bevan v. Fix,* at ¶ 26 (citing *In re HC,* 983 P.2d 1205, 1209 (Wyo. 1999) and *Ahearn v. Anderson–Bishop Partnership,* 946 P.2d 417, 422 (Wyo. 1997)), we may uphold the grant of summary judgment upon any proper legal ground finding support in the record.

### DISCUSSION

#### *Res Judicata/Judicial Estoppel*

[¶ 9] PRC argues the district court erred in holding that it was barred by the principles of res judicata from obtaining a declara-

tory judgment from the district court as to the meaning of the word "exclusive" as used within the Agreement and from asserting that the exclusive rights of the City granted under the Agreement are unenforceable because they violate public policy. In essence, PRC asserts that these issues were not actually and necessarily litigated in the previous action commenced between PRC and the City, and the issues decided in the prior adjudication are not identical to the issues presented in this matter.

[¶ 10] In particular, PRC maintains that the previous litigation between the parties presented a host of issues but the primary issues were the scope of lands covered by the Agreement and whether or not water usage in the Quarter Circle 5 subdivision should be "credited" to PRC's annual entitlement. Thereby, PRC contends they should not now be precluded from litigating the specific issue of the meaning of the word "exclusive" as used within the Agreement and from asserting that the exclusive rights of the City granted under the Agreement are unenforceable because they violate public policy.

[¶ 11] The City asserts that a careful analysis of the previous litigation and this litigation demonstrates that the specific meaning of the word "exclusive" as used in the Agreement was vigorously litigated and determined in the City's favor in the previous litigation. Similarly, the City contends that in the previous litigation PRC raised but failed to actively pursue their asserted defense that the Agreement violated public policy. Hence, in summary, the City maintains that PRC's challenge in this matter is nothing more than a rephrasing of issues that have already been decided.

[¶ 12] In *Amoco Prod. Co. v. Board of County Comm'rs of County of Sweetwater*, at ¶ 12, we stated:

In *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶¶ 15–20, 25 P.3d 511, ¶¶ 15–20 (Wyo.2001), we extensively recognized that res judicata and collateral estoppel are related but distinct concepts.

Res judicata bars the relitigation of previously litigated *claims* or *causes of action*. *Slavens v. Board of County Commissioners*, 854 P.2d 683, 686 (Wyo.

1993). Four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.* Collateral estoppel bars relitigation of previously litigated *issues* and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

. . .

... In *CLS v. CLJ*, 693 P.2d 774 (Wyo.1985), the appellant failed to appear at trial, and his suit to establish paternity was dismissed with prejudice pursuant to W.R.C.P. 41(b). A second suit raising the same claim was subsequently filed. We held that the appellant was barred by the doctrine of res judicata from bringing the same claim because an involuntary dismissal under Rule 41(b) operated as an adjudication of the merits. 693 P.2d at 777.

In *Day v. Davidson,* 951 P.2d 378 (Wyo.1997), Day had filed an action based on vicarious liability against Pamida, Inc. based on the negligent acts of one of its employees. Day accepted an offer of judgment from Pamida and then subsequently filed an action against the employee based on the negligent act underlying the vicarious liability claim. We held that Day could not bring a subsequent action against the employee based on the fact that, as a vicarious liability situation, the employee was entitled to be credited with the amount of the judgment entered against his em-

ployer leaving Day with nothing to recover from the employee. 951 P.2d at 383. While not directly implicating the doctrine of res judicata, *Day*, like *CLS*, concerned the same *claim* brought by the same plaintiff.

The application of res judicata to those situations where a plaintiff attempts to bring the same claim in a subsequent action against the same or different defendants has a logical basis: It encourages resolution of the plaintiff's claims in a single action, and it forces parties to abide by their agreements....

. . .

Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.

(Quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4443, at 382–85 (1981).)

[¶ 13]  In the previous litigation, the City filed a complaint against PRC for recovery of pumping expenses allegedly owed by PRC under the Agreement.  Many claims and counterclaims followed including a request by PRC for a declaration of the specific time period referred to in the Agreement during which the City had the exclusive right to drill for and produce water pursuant to the Agreement.  PRC also asserted as an affirmative defense that the Agreement was in violation of public policy and was therefore void or voidable.

[¶ 14]  On September 4, 1992, the district court entered an order in the previous litigation.  That order stated in applicable part:

2.  As to the following, the Agreement is clear and unambiguous and the Court interprets the Agreement as follows:

*a.  The lands to which Polo Ranch's water use is limited and on which the City has an exclusive right to develop the ground water are those specifically described in the Agreement.*

*b.  The term of the exclusive right of the City to develop and use the Polo Ranch ground water has not expired and such right exists for the duration*

*of the Agreement,* which is supported by consideration and is not invalid for indefiniteness of term.

. . . .

*f.  Polo Ranch is restricted from utilizing its share of the water on lands other than those described in the Agreement, and is prohibited from selling the water.*

(Emphasis added.)

[¶ 15]  The City filed an amended and supplemental complaint in the previous litigation which requested that the district court issue a declaratory judgment declaring that the City had the exclusive right to drill the subsurface water on the lands described in the Agreement.  On June 18, 1996, after a bench trial was held, the district court issued its findings of fact and conclusions of law in the previous litigation.  This document stated, in applicable part:

45.  The lands contained within the subdivision developed by the Polo Ranch remain subject to the 1955 Agreement, as there has been no action by the City releasing these lands from the Agreement.  But the City took no action when it knew or should have known that the land would be used for residential purposes which would require wells.  *While it retains the exclusive right to drill wells on the land in the future,* it has waived any right to charge the existing residential production against Polo's allocation under the Agreement.

(Emphasis added.)  Later, the district court's judgment was entered in the previous litigation which similarly declared:

*6.  On the Seventh Claim for Relief in Plaintiff's Amended and Supplemental Complaint, Judgment is granted to the City of Cheyenne, Cheyenne Board of Public Utilities, declaring and adjudging that the City retains for the future the exclusive right to drill for subsurface waters on all lands subject to the 1955 Agreement, including the lands subject to the 1955 Agreement that are contained within the subdivision developed by the Polo Ranch Company.*  However, the Court declares and adjudges that the City

has waived its right to object to the pumping of existing residential wells within the aforementioned subdivision, and it is not entitled to charge production from those existing residential wells against Polo Ranch Company's share of water under the 1955 Agreement.

(Emphasis added.) This judgment was then appealed to this court. However, no appeal was taken as to the City's exclusive right to develop and use the Polo Ranch groundwater, including PRC's assertion that the Agreement violated public policy. Again *see Polo Ranch Co. v. City of Cheyenne*, 969 P.2d at 135–36.

[¶ 16] Application of the four factors identified above regarding the doctrine of res judicata demonstrate that PRC is estopped in this case from again litigating the specific issue of the meaning of the word "exclusive" as used within the Agreement and from asserting that the exclusive rights of the City granted under the Agreement are unenforceable because they violate public policy. Obviously, both PRC and the City were the parties involved in the previous litigation. In addition, their capacities as parties are identical in the previous litigation and this case. Moreover, the district court in the previous litigation explicitly ruled on a number of occasions that, pursuant to the Agreement, the City possessed the exclusive right to drill and use the water located on the Polo Ranch property. Indeed, the district court in the previous litigation not only clearly expressed that the City had the exclusive right to drill and use the water that existed upon the subject property under the Agreement, but went further to specify the exact location of the real property that these rights could be exercised upon, the time duration of such rights, that PRC was restricted from utilizing its share of the water on lands other than those described in the Agreement, and that PRC was prohibited from selling the water. The district court was patently clear, detailed, and specific in its ruling with respect to the exclusivity of the City's rights under the Agreement and the limitations to which PRC must abide under the Agreement.

[¶ 17] Even though PRC attempts to argue otherwise, no viable argument exists that the subject matter, namely the exclusive nature of the City's rights under the Agreement, is not the same in the previous litigation and in this action. While the main issue in the previous litigation centered around the scope of the lands covered by the Agreement and whether or not water usage in the Quarter Circle 5 subdivision should be "credited" to PRC's annual entitlement, the fact still remains that the City requested that the district court issue a declaration that the City had the exclusive right to drill the subsurface water on the lands described in the Agreement. Furthermore, PRC also asserted the argument in its answer to the City's complaint by presenting the affirmative defense that the Agreement violated public policy and was therefore void or voidable.

[¶ 18] Finally, PRC complains that it was not afforded the opportunity to sufficiently present and argue in the previous litigation the exclusiveness of the City's rights under the Agreement and that the Agreement was void or voidable because its terms violated public policy. As noted above, these very issues were clearly placed before the district court for determination by the City and PRC in the previous litigation. PRC arguably could have raised such issues when it appealed the ruling of the district court in the previous litigation but failed to do so. Accordingly, we hold that PRC had every opportunity to fully and fairly litigate these issues in the previous litigation as these issues were actually and necessarily before the district court in that action. Likewise, application of the doctrine of collateral estoppel or issue preclusion bars PRC from relitigating the exclusive nature of the City's rights pursuant to the Agreement and the related violation of public policy argument made by PRC. As stated previously, these issues were specifically decided in the previous adjudication and are identical to those issues now asserted by PRC. PRC and the City were also both parties in the previous litigation with PRC having a full and fair opportunity to litigate the involved issues in that proceeding.

[¶ 19] The district court clearly issued a ruling on the merits concerning these issues in the previous litigation. In *Cross v. Berg*

*Lumber Co.*, 7 P.3d 922, 930 (Wyo.2000) (citing *Erhart v. Flint Engineering & Const.*, 939 P.2d 718, 724 (Wyo.1997) and *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 290 P. 561, 566 (1930)), we declared that judicial estoppel requires that "where a man is successful in the position taken in the first proceeding, then that position rises to the dignity of conclusiveness." In this instance, the City was clearly successful in the previous litigation regarding the issue of its exclusive right to develop and use the water on Polo Ranch as provided under the Agreement. This prior determination warrants the conclusive disposition of this matter.

[¶ 20] Finally, although such theory was not relied upon by the district court in making its decision in this action, this court recognized in *Amoco Prod. Co. v. Board of County Comm'rs of County of Sweetwater*, ¶ 17 (citing *Cross v. Berg Lumber Co.*, 7 P.3d at 930 and *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo.1976)), that judicial estoppel is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will simply not be allowed to maintain inconsistent positions in judicial proceedings.

[¶ 21] In the previous litigation, PRC requested through counterclaim a declaration of the specific time period referred to in the Agreement during which the City had the exclusive right to drill for and produce water pursuant to the Agreement. In essence, through this counterclaim, PRC admitted that the City had the exclusive right to drill for and produce water under the terms of the Agreement. Therefore, by virtue of such prior judicial admission, PRC cannot be allowed to now contend that the interpretation of the word "exclusive" as used within the Agreement needs to be further clarified by the district court in the instant case.

[¶ 22] In a last ditch effort, PRC further argues that this court has previously indicated that it will limitedly apply the doctrines of res judicata, collateral estoppel, and judicial estoppel. In the case of *Robertson v. TWP, Inc.*, 656 P.2d 547, 553 (Wyo.1983) (citations omitted) this court stated:

An examination of the cases in which this court has considered the application of the doctrine of res judicata as that rule is precisely defined and its corollary collateral or judicial estoppel leads to the conclusion that the policy in Wyoming has been to apply those propositions rather narrowly. While those concepts will be invoked when appropriate to avoid repetitious suits involving the same cause of action, and the relitigation of matters actually litigated and determined in the first proceeding, to the end that the concept of finality is honored in litigation in the State of Wyoming, still they are not to be applied in a highly technical manner which would in a context such as this prevent litigants from presenting their claims against others for determination on their merits.

Nevertheless, even upon review of our opinion in *Robertson*, we are convinced that this matter is one where the doctrines of res judicata, collateral estoppel, and judicial estoppel should be applied. In the interests of finality and judicial economy, when asserted claims and issues have actually been previously litigated and determined on the merits in a prior matter, these doctrine are properly applied. Such is the case here.[4]

### *Injunctive Relief—Charges Against PRC's Annual Free Entitlement*

[¶ 23] The last issue that we address on appeal is PRC's contention that the district court essentially abused its discretion when it ruled that PRC does not have any right to drill for subsurface water on the lands subject to the Agreement and, as a result, the amount of water taken from residential wells drilled on lands within Quarter Circle Five after April 18, 1995, be charged against the annual free water allocation from the City to PRC called for under the Agreement. PRC asserts a very brief argument on appeal and argues that the district court erred because

4. Given this court's conclusion on this issue, it is unnecessary for us to address the issues raised by PRC concerning the terms of the Agreement being in violation of public policy as that issue is now moot.

it created contract terms out of whole cloth and resorted to adding additional terms to the Agreement which do not appear anywhere within the four corners of that Agreement. The City, in an equally brief argument, contends that the district court's ruling is in the nature of affirmative injunctive relief, well within the district court's exercise of broad equitable powers. In addition, the City maintains that the district court's ruling simply acknowledges that the Agreement is binding upon PRC's successors in interest.

[¶ 24] In *East Broadway Associates, Ltd. v. Dowell*, 2002 WY 106, ¶¶ 17 and 18, 49 P.3d 1004, ¶¶ 17 and 18 (Wyo.2002), citing, in part, our opinion rendered with respect to the previous litigation, we stated:

> The primary purpose in interpreting or construing a contract is to determine the intent and understanding of the parties, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. *Reed v. Miles Land and Livestock Co.*, 2001 WY 16, ¶ 10, 18 P.3d 1161, ¶ 10 (Wyo.2001). The interpretation and construction of a contract are done by the court as a matter of law. *Id.* Where an agreement is in writing and the language is clear and unambiguous, the parties' intent is to be secured from the four corners of the contract. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 598 (Wyo.1989). We consider the contract as a whole, taking into consideration the relationship between the various parts. *Id.* "We turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain." *Wolter v. Equitable Resources Energy Company, Western Region*, 979 P.2d 948, 951 (Wyo.1999). **Whether or not a contract is ambiguous is a question of law for the court.** *Corpening v. Corpening*, 2001 WY 18, ¶ 8, 19 P.3d 514, ¶ 8 (Wyo.2001).

(Emphasis added.) *Collins v. Finnell*, 2001 WY 74, ¶ 15, 29 P.3d 93, ¶ 15 (Wyo. 2001). This court has also enunciated:

> Common sense and good faith are leading precepts of contract construction, and the interpretation and construction

of contracts is a matter of law for the courts. *Reed* [*v. Miles Land and Livestock Co.*, 2001 WY 16], ¶ 10 [18 P.3d 1161, ¶ 10 (Wyo.2001) ]. We have also recognized that the language of a contract is to be construed within the context in which it was written, and the court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made. *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo.1998).

*Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.*, 2001 WY 57, ¶ 12, 25 P.3d 1064, ¶ 12 (Wyo.2001).

Finally, this court has stated that in the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Boley v. Greenough*, 2001 WY 47, ¶ 10, 22 P.3d 854, ¶ 10 (Wyo.2001) (citing *Amoco Prod. Co. v. EM Nominee Partnership Co.*, 2 P.3d 534, 539–40 (Wyo.2000) and *Burbank v. Wyodak Resources Dev. Corp.*, 11 P.3d 943, 946–47 (Wyo.2000)).

[¶ 25] Moreover, in *Kincheloe v. Milatzo*, 678 P.2d 855, 861 (Wyo.1984) this court recognized that:

> Preliminarily, it is to be remembered that, when courts are called upon to employ their injunctive authority, they must utilize this power with great caution. We have said:
>
> > "The extraordinary remedy of an injunction is a far-reaching force and must not be indulged in under hastily contrived conditions. It is a delicate judicial power and a court must proceed with caution and deliberation before exercising the remedy." *Simpson v. Petroleum, Inc.*, Wyo., 548 P.2d 1, 3 (1976).
>
> Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Brown v. J.C. Penney Co.*, D.C.Wyo., 54 F.Supp. 488 (1943). This discretion is, however, not unfettered, but "must be exercised reasonably and in harmony with well established principles," 43 C.J.S. Injunctions § 14, p.

772. Where injunctive relief is sought, it is the trial court that grants or denies it, based upon the facts—not the appellate court, 43 C.J.S. Injunctions § 14, pp. 769, 773. *Crosby v. Watson,* 144 Colo. 216, 355 P.2d 958 (1960); *Hansen v. Galiger,* 123 Mont. 101, 208 P.2d 1049 (1949).

[¶ 26] In *Weiss v. Pedersen,* 933 P.2d 495, 498–99 (Wyo.1997) (quoting *Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo.1981)), we further recognized:

Although actions for injunctive relief are authorized by statute, Wyo. Stat. §§ 1–28–101 to –111 (1988 & Supp.1996), they are, by nature, requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo.1986). Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. *Id.; Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo.1981). Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. *Rialto Theatre, Inc.,* 714 P.2d at 332. An injury is irreparable " 'where it is of a "peculiar nature, so that compensation in money cannot atone for it." *Gause v. Perkins,* 56 N.C. 177 (1857).' *Frink v. North Carolina Board of Transportation,* 27 N.C.App. 207, 218 S.E.2d 713, 714 (1975)." *Gregory,* 635 P.2d at 801.

"The traditional office of injunction has been to protect property rights." 42 Am. Jur.2d Injunctions § 69 at 814 (1969).

"Jurisdiction to prevent threatened disturbance of the peaceful use and enjoyment of real property is inherent in a court of equity, and injunction is a proper and ordinary remedy for the protection of owners in the enjoyment of their rights in real estate . . . ." (Footnotes omitted.) 42 Am.Jur.2d Injunctions, § 71, p. 815 (1969).

[¶ 27] In this case, the district court specifically found:

1. In the prior litigation between the parties, which is found at Doc. 124, No. 343, Doc. 138, No. 363, and Doc. 138, No. 492, the City of Cheyenne and its Board of Public Utilities filed an Amended and Supplemental Complaint on April 18, 1995, in which it sought, in its Seventh Claim for Relief, a declaratory judgment that the City has the exclusive right to drill for subsurface water on the lands described in the 1955 Agreement. In its Findings of Fact and Conclusions of Law following the trial in those combined cases, this Court specifically concluded, in its Conclusions of Law at paragraph 45, that the City has the exclusive right to drill for subsurface water on all lands subject to the 1955 Agreement, with the limited exception set forth therein. That finding was a judicial determination by this Court that the City's "exclusive right to drill" in the 1955 Agreement means what the City says it means, i.e., that the Polo Ranch Company does not have any right to drill for subsurface water on the lands subject to the 1955 Agreement, any such rights having been given up by the Bells in the 1955 Agreement. As a result, the Plaintiffs in this litigation are precluded by the doctrine of *res judicata* from re-litigating this issue, and the City and its Board of Public Utilities are entitled to summary judgment as requested . . . . The City is also entitled to injunctive relief to preserve its exclusive drilling rights on the lands subject to the 1955 Agreement, as requested . . . . Water produced from wells drilled by Plaintiffs or their successors in interest on lands subject to the 1955 Agreement should be counted as water provided to the Polo Ranch Company pursuant to paragraph 6 of the 1955 Agreement, except to the extent this Court determined that the City waived the right to charge existing residential wells, as set forth in paragraph 45 of this Court's Conclusions of Law mentioned above.

Thereafter, the district court ordered, adjudged and decreed:

(3) The 1955 Agreement grants to the City the exclusive right to drill for water under the lands covered by the 1955 Agreement, that this exclusive right applies to all aquifers beneath the lands, and that Polo Ranch [Company] and any successor in interest is precluded from drilling for wa-

ter beneath those lands, without regard to the depth of the well or whether the production of water from the well interferes with the City's production of water from under the lands covered by the 1955 Agreement.

(4) Polo Ranch [Company] and John and Norma Morris are permanently enjoined from drilling underground water wells on the land covered by the 1955 Agreement, and further, from representing to subsequent purchasers that such purchasers may drill for and use underground water on land subject to the 1955 Agreement.

. . .

■ Water produced from wells drilled after April 18, 1995, by Polo Ranch Company or its successors in interest, on lands subject to the 1955 Agreement, shall be counted as water provided to the Polo Ranch Company under paragraph 6 of the 1955 Agreement.

■ [¶ 28] As we stated previously, we agree that the district court's ruling in the previous litigation with respect to the exclusivity of the City's drilling and usage rights under the Agreement are res judicata. In making this determination, the district court obviously felt that the Agreement was unambiguous with respect to this issue, and we are not now in a position to challenge that determination. Likewise, we cannot, at this time, question that court's decision with respect to the alleged affirmative defense made by PRC that the terms of the Agreement violated public policy.

■ [¶ 29] Moreover, upon our review, we fail to see that the district court in this case abused its discretion in granting the injunctive relief that it chose. Under the circumstances that exist, irreparable harm would continue in the future if sufficiently tailored injunctive relief was not imposed upon PRC and no adequate remedy at law existed with respect to PRC's past violation of the City's previously clearly expressed exclusivity to drill and use the water under the Agreement. Therefore, we hold that the district court's imposed injunctive relief in this case to be reasonably exercised in good faith, with common sense, and in harmony with the well-established principles expressed in past Wyoming case law authority. Indeed, we note that if some injunctive relief was not imposed by the district court in this matter, as requested by the City, PRC would be simply able to continue unfettered into the future to violate the exclusive rights granted to the City under the Agreement without any risk of appropriate consequences.

## CONCLUSION

[¶ 30] We affirm the action of the district court in granting partial summary judgment in favor of the City and against PRC in this action. We conclude that no material question of fact exists with respect to those issues addressed and that the City was properly entitled to partial summary judgment as a matter of law.

HILL, Chief Justice, dissenting.

[¶ 31] On rare occasions, we will find a contract void because it violates public policy:

We will not invalidate a contract entered into freely by competent parties on the basis of public policy unless that policy is well settled, unambiguous and not in conflict with another public policy equally or more compelling.

*Sinclair Oil Corporation v. Columbia Casualty Company,* 682 P.2d 975, 979 (Wyo.1984); *see also Combs v. Sherry–Combs,* 865 P.2d 50, 54 (Wyo.1993); and *Hamburg v. Hansen,* 683 P.2d 662, 662–63 (Wyo.1984). The public policy concern implicated here is the development of the State's underground water resources. As demonstrated by the events of this past summer, it is difficult to imagine a more important public policy issue in Wyoming than the continued viability of its water resources. Accordingly, I do not believe this issue should have been decided on a summary judgment motion. If the Agreement violates public policy, then it is void or, at a minimum, voidable, and the doctrines of collateral estoppel, res judicata, and judicial estoppel should not be a barrier to effectuating that policy. Since this matter was deter-

mined by summary judgment, the record is not developed sufficiently for a determination of whether the Agreement violates a public policy of this state. Therefore, I would remand the matter for proceedings to address the specific public policy questions raised by Polo Ranch.